# 14-2689-cv(L)

14-2691 (CON), 14-2692 (CON), 14-2693 (CON), 14-2696 (CON), 14-2697 (CON),
14-2698 (CON), 14-2699 (CON), 14-2700 (CON), 14-2701 (CON), 14-2702 (CON),
14-2703 (CON), 14-2704 (CON), 14-2705 (CON), 14-2709 (CON), 14-2711 (CON),
14-2713 (CON),14-2714 (CON), 14-2715 (CON), 14-2718 (CON), 14-2722 (CON),
14-2723 (CON), 14-2724 (CON), 14-2728 (CON), 14-2732 (CON), 14-2736 (CON)

## In the United States Court of Appeals
## for the Second Circuit

NML CAPITAL, LTD., AURELIUS CAPITAL MASTER, LTD.

(*caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF PLAINTIFFS-APPELLEES AURELIUS
CAPITAL MASTER, LTD., ACP MASTER, LTD., AURELIUS
OPPORTUNITIES FUND II, LLC, BLUE ANGEL CAPITAL I LLC,
AND PABLO ALBERTO VARELA ET AL.**

Edward A. Friedman
Daniel B. Rapport
FRIEDMAN KAPLAN SEILER
   & ADELMAN LLP
7 Times Square
New York, NY 10036
(212) 833-1100

Roy T. Englert, Jr.
Mark T. Stancil
ROBBINS, RUSSELL, ENGLERT, ORSECK,
   UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500

*Counsel for Plaintiffs-Appellees Aurelius Entities and Blue Angel Capital I LLC*

Michael C. Spencer
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Counsel for Plaintiffs-Appellees Pablo Alberto Varela et al.*

ACP MASTER, LTD., BLUE ANGEL CAPITAL I LLC, AURELIUS
OPPORTUNITES FUND II, LLC, PABLO ALBERTO VARELA,
LILA INES BURGUENO, MIRTA SUSANA DIEGUEZ, MARIA
EVANGELINA CARBALLO, LEANDRO DANIEL POMILIO,
SUSANA AQUERRETA, MARIA ELENA CORRAL, TERESA
MUNOZ DE CORRAL, NORMA ELSA LAVORATO, CARMEN
IRMA LAVORATO, CESAR RUBEN VAZQUEZ, NORMA HAYDEE
GINES, MARTA AZUCENA VAZQUEZ, OLIFANT FUND, LTD.,

*Plaintiffs-Appellees*,

-v.-

THE REPUBLIC OF ARGENTINA,

*Defendant-Appellant*,

CITIBANK, N.A.,

*Movant-Appellant*

_____

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellees state as follows:

Aurelius Capital Master, Ltd. ("ACM"), is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital International, Ltd. is the parent of ACM. No publicly held corporation owns 10% or more, directly or indirectly, of the stock of ACM.

Aurelius Opportunities Fund II, LLC ("AOF"), is a limited liability company organized and existing under the laws of the State of Delaware. AOF is not a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

ACP Master, Ltd., is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital Partners, LP, is the parent of ACP Master, Ltd. Aurelius Capital GP, LLC, is the sole general partner of Aurelius Capital Partners, LP, and is the indirect parent of ACP Master, Ltd. No publicly held corporation owns 10% or more of the stock of ACP Master, Ltd.

Blue Angel Capital I LLC ("Blue Angel") is a limited liability company organized and existing under the laws of the State of Delaware. Blue Angel is not a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

Pablo Alberto Varela, Lila Ines Burgueno, Mirta Susana Dieguez, Maria Evangelina Carballo, Leandro Daniel Pomilio, Susana Aquerreta, Maria Elena Corral, Teresa Munoz De Corral, Norma Elsa Lavorato, Carmen Irma Lavorato, Cesar Ruben Vazquez, Norma Haydee Gines, and Marta Azucena Vazquez are not corporations, and therefore Rule 26.1 does not require any disclosures with respect to them.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF AUTHORITIES ...............................................................................v

PRELIMINARY STATEMENT ........................................................................1

COUNTER-STATEMENT OF JURISDICTION .....................................................2

ISSUES PRESENTED.......................................................................................2

COUNTER-STATEMENT..................................................................................3

    A.  The Injunctions .................................................................................3

    B.  Citibank's Motion For Clarification............................................5

    C.  Appellees' Motion For Partial Reconsideration........................8

    D.  The July 28 Order ...........................................................................13

STANDARD OF REVIEW ..............................................................................15

SUMMARY OF ARGUMENT ..........................................................................15

ARGUMENT .................................................................................................18

    I.  THIS COURT LACKS APPELLATE JURISDICTION UNDER
        28 U.S.C. § 1291 ..........................................................................18

    II.  THIS COURT LACKS APPELLATE JURISDICTION UNDER
        28 U.S.C. § 1292 ..........................................................................20

        A.  The July 28 Order Is Not Appealable Under Section 1292(a)
            Because It Neither Modified Nor Refused To Modify An
            Injunction...............................................................................21

            1.  The July 28 Order Did Not Modify, But Merely Clarified,
                The Existing Injunction............................................... 22

iii

## <u>TABLE OF CONTENTS—Cont'd</u>

**Page**

2.  The July 28 Order Is Not Appealable As A Refusal To Modify An Injunction Because Appellants Sought No Such Modification ...................................................................... 29

B.  Even If The July 28 Order Is Construed As A Refusal To Modify The Injunctions, The District Court Addressed Only Exchange Bonds, And Has Not Issued Any Ruling Regarding Any Other Argentine Law Bonds ...................................................... 31

III.  THIS COURT HAS PREVIOUSLY HELD THAT THE ISSUES PRESENTED IN CITIBANK'S APPEAL ARE "PREMATURE" .........39

A.  Citibank's Arguments Are Premature ................................................41

B.  As Far As U.S. Courts Are Concerned, There Is No Conflict Between Argentine Law And U.S. Law............................................42

C.  Appellants Are Not Entitled To Relief Because Argentina Has Repeatedly Violated, And Citibank Has Declared That It *Will* Violate, U.S. Law ............................................................................47

CONCLUSION .......................................................................................52

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aevoe Corp. v. AE Tech Co., Ltd.*,
  727 F.3d 1375 (Fed. Cir. 2013) ........................................................................21

*Arnold v. Lucks*,
  392 F.3d 512 (2d Cir. 2004) .............................................................................15

*Bano v. Union Carbide*,
  361 F.3d 696 (2d Cir. 2004) .............................................................................44

*Birmingham Firefighters Ass'n 117 v. Jefferson Cnty.*,
  280 F.3d 1289 (11th Cir. 2002) ............................................................ 22, 23, 27

*Bridgeport Guardians, Inc. v. Delmonte*,
  602 F.3d 469 (2d Cir. 2010) .............................................................................27

*Chafin v. Chafin*,
  133 S. Ct. 1017 (2013) .....................................................................................44

*Chem. Bank N.Y. Trust Co. v. Kheel*,
  369 F.2d 845 (2d Cir. 1966) .............................................................................50

*Dunlop v. Pan Am. World Airways, Inc.*,
  672 F.2d 1044 (2d Cir. 1982) ...........................................................................29

*Gautreaux v. Chi. Hous. Auth.*,
  178 F.3d 951 (7th Cir. 1999) ............................................................. 20, 22, 27, 31

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988) .........................................................................................15

*Goya Foods, Inc. v. Wallack Management Co.*,
  290 F.3d 63 (1st Cir. 2002) ..............................................................................46

*Horne v. Flores*,
  557 U.S. 433 (2009) .........................................................................................30

v

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*IIT v. Vencap, Ltd.*,
  519 F.2d 1001 (2d Cir. 1975) ..............................................................25

*In re Complaint of Ingram Towing Co.*,
  59 F.3d 513 (5th Cir. 1995) ................................................................22

*Kamerling v. Massanari*,
  295 F.3d 206 (2d Cir. 2002) ........................................................ 2, 18

*Leftridge v. Conn. State Trooper Officer No. 1283*,
  640 F.3d 62 (2d Cir. 2011) .................................................................19

*Major v. Orthopedic Equip. Co., Inc.*,
  561 F.2d 1112 (4th Cir. 1977) .................................................... 22, 42

*Mikel v. Gourley*,
  951 F.2d 166 (8th Cir. 1991) ...................................................... 21, 26

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009) ...........................................................................20

*Motorola Credit Corp. v. Uzan*,
  561 F.3d 123 (2d Cir. 2009) ...............................................................52

*Motorola, Inc. v. Computer Displays Int'l, Inc.*,
  739 F.2d 1149 (7th Cir. 1984) ............................................................21

*Nat'l Acceptance Co. of Am., Inc. v. Frigidmeats, Inc.*,
  627 F.2d 764 (7th Cir. 1980) ..............................................................29

*NML Capital, Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) .............................................................3, 4

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ................................................... *passim*

*Pimentel & Sons Guitar Makers, Inc. v. Pimentel*,
  477 F.3d 1151 (10th Cir. 2007) .................................... 22, 23, 25, 28

vi

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

*Rabbi Jacob Joseph Sch. v. Province of Mendoza*,
    425 F.3d 207 (2d Cir. 2005) ..............................................................18

*Reliance Ins. Co. v. Mast Constr. Co.*,
    84 F.3d 372 (10th Cir. 1996) .............................................................46

*Scipar, Inc. v. Simses*,
    354 Fed. App'x 560 (2d Cir. 2009) ...................................................23

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    732 F.2d 253 (2d Cir. 1984) ..............................................................30

*Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*,
    385 U.S. 23 (1966) .............................................................................20

*Thomas v. Blue Cross & Blue Shield Ass'n*,
    594 F.3d 823 (11th Cir. 2010) ....................................................19, 22

*Thypin Steel Co. v. Asoma Corp.*,
    215 F.3d 273 (2d Cir. 2000) ........................................................20, 31

*United States v. Philip Morris USA Inc.*,
    686 F.3d 839 (D.C. Cir. 2012) .....................................................21, 23

*United States v. W. Elec. Co., Inc.*,
    777 F.2d 23 (D.C. Cir. 1985) .............................................................31

*Waffenschmidt v. MacKay*,
    763 F.2d 711 (5th Cir. 1985).............................................................46

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
    423 F.3d 137 (2d Cir. 2005) .....................................................*passim*

*Wilder v. Bernstein*,
    49 F.3d 69 (2d Cir. 1995) ...........................................19, 21, 26, 41

## TABLE OF AUTHORITIES—Cont'd

**Page(s)**

**Statutes**

28 U.S.C. § 1291 ....................................................................... 1, 2, 15, 18

28 U.S.C. § 1292 ...........................................................................................2

28 U.S.C. § 1292(a)(1) ....................................................................... *passim*

Fed. R. App. P. 28(i) .....................................................................................2

Fed. R. Civ. P. 60(b) ..................................................................... 16, 29, 38

Fed. R. Civ. P. 65(d) ............................................................................. 46, 52

Fed. R. Civ. P. 65(d)(2) ......................................................................... 5, 39

**Other Authorities**

Agreement for the Amicable Settlement and Compromise of Expropriation,
  Feb. 27, 2014 ..........................................................................................37

ANSES Quarterly Report, June 30, 2014 ..................................................12

Saabira Chaudhury, *Citigroup Could Lose up to $80 Million From
  Argentina Default*, Wall St. J., Aug. 1, 2014 .......................................51

*Even Without the RUFO Clause, Cristina Says She Will Not Pay Griesa's
  Ruling*, lanacion.com .............................................................................50

Form 18-K, Sept. 30, 2011 .................................................................. 11, 38

Press Release, Repsol, Repsol Completes the Sale of its Argentinean Assets
  for $6.309 billion, May 23, 2014 ...........................................................37

Prospectus Supplement, Apr. 28, 2010 .....................................................38

Registration Statement, Mar. 18, 2010 ......................................................38

15B Charles Allen Wright & Arthur R. Miller, Federal Practice and
  Procedure (2d ed. 1992) .........................................................................18

## PRELIMINARY STATEMENT

As Yogi Berra would say, "it's déjà vu all over again."  This Court is called on to address the validity of the very Injunctions that it has already *twice* upheld.  Appellants' attempt to get a third bite at the apple is just as meritless as Argentina's previous efforts to evade responsibility for its own actions.  But this Court should not even reach the merits, because this Court lacks jurisdiction over the district court's July 28 Order.

There is plainly no "final decision" within the meaning of 28 U.S.C. § 1291: This very issue is still actively being litigated before the district court.  And, although interlocutory orders *modifying* injunctions can be appealed under 28 U.S.C. § 1292(a)(1), orders *clarifying* injunctions cannot.  The July 28 Order is a textbook example of a non-appealable clarification:  It simply makes clear that that the Injunctions, by their own terms, apply to *all* U.S.-dollar-denominated Exchange Bonds, including those issued under Argentine law.  Appellants never even filed a proper Rule 60(b) motion for modification of the Injunctions, and the district court has yet to rule *at all* on Appellants' belated complaints that the Injunctions could affect other categories of Argentine Law Bonds.  This Court should dismiss this appeal for lack of jurisdiction.

Appellees—Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, Blue Angel Capital I LLC, and Pablo Alberto Varela

1

*et al.*—also join the arguments made by NML and the other Appellees. We do not rehearse those arguments here; they are incorporated by reference. See Fed. R. App. P. 28(i).

## COUNTER-STATEMENT OF JURISDICTION

This Court's "appellate jurisdiction is limited generally to appeals from final judgments of the district courts pursuant to 28 U.S.C. § 1291," and "from certain interlocutory orders pursuant to 28 U.S.C. § 1292." *Kamerling v. Massanari*, 295 F.3d 206, 213 (2d Cir. 2002) (per curiam). This Court lacks jurisdiction under Section 1291 because the July 28 Order is not a "final decision." This Court lacks jurisdiction under Section 1292 because the July 28 Order merely clarified, and did not modify or refuse to modify, the Injunctions.

## ISSUES PRESENTED

1.     Is the district court's July 28 Order a "final decision" under 28 U.S.C. § 1291?

2.     (a) Was the July 28 Order—which reaffirmed that the Injunctions expressly apply to *all* U.S.-dollar-denominated Exchange Bonds (Argentine law or otherwise)—a "modification" of the Injunctions appealable under 28 U.S.C. § 1292(a)(1), or is the Order a non-appealable clarification of the Injunctions?

2

(b) Was the July 28 Order an appealable "refusal to modify" the Injunctions, when Appellants filed no Rule 60(b) motion for modification (and would not have been entitled to such a modification in any event)?

(c) Even if the July 28 Order was an appealable *partial* "refusal to modify" with respect to Argentine Law Exchange Bonds, does this Court have jurisdiction under Section 1292(a)(1) to review issues relating to *other* bonds that were raised by Appellants only *after* the district court's hearing and on which the district court deferred ruling pending further proceedings?

3.    In any event, is this appeal "premature" under this Court's decision of August 23, 2013, which held that third parties disputing the Injunctions' reach could raise such objections in contempt proceedings, but not as challenges to the validity of the Injunctions against Argentina?

## COUNTER-STATEMENT

Appellees adopt and incorporate by reference the Counter-Statement in the brief of Plaintiff-Appellee NML Capital, Ltd., *et al.*  Below, we briefly summarize those facts principally relevant to why this Court lacks jurisdiction over this appeal.

### A.    The Injunctions

In 1994, "Argentina began issuing debt securities pursuant to a Fiscal Agency Agreement" (the "FAA").  *NML Capital, Ltd. v. Republic of Argentina*,

3

699 F.3d 246, 251 (2d Cir. 2012) ("*NML I*").  To make the FAA bonds more marketable, "Argentina made a series of promises to the purchasers."  One promise was "that any disputes concerning the bonds could be adjudicated in the courts of New York."  Another was that Argentina would "treat the FAA Bonds at least equally with its other external indebtedness."  *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 237 (2d Cir. 2013) ("*NML II*").

In 2001, Argentina defaulted on the FAA bonds.  *NML I*, 699 F.3d at 251.  "Following the 2001 default on the FAA bonds, Argentina offered holders of the FAA Bonds new exchange bonds in 2005 and 2010 (the 'Exchange Bonds')."  *Ibid.*  Argentina continued to make payments to holders of the Exchange Bonds, while failing to make payments to holders of the original defaulted FAA bonds.  The district court held—and this Court twice affirmed—that, by failing to make payments to the holders of the FAA bonds, "Argentina breached its promise of equal treatment."  *NML II*, 727 F.3d at 237.

As a remedy for that breach, and to prevent future efforts by Argentina to evade its contractual obligations, the district court entered the Injunctions.  Paragraph 2(a) of the Injunctions ordered that:

> Whenever the Republic pays any amount due under terms of *the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers*, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (*collectively, the "Exchange Bonds"*), the Republic shall concurrently

4

> or in advance make a "Ratable Payment" to [Appellees, who are
> holders of the FAA bonds].

JA1462 (emphasis added).

The Injunctions therefore expressly define "Exchange Bonds" as all bonds "issued pursuant to the Republic's 2005 or 2010 Exchange Offers." *Ibid.* And they make clear that any payment on *any* Exchange Bond triggers the requirement to make a ratable payment to holders of the FAA bonds—*i.e.*, to Appellees. The Injunctions further forbid Argentina from taking any steps to evade the Injunctions or diminish the district court's ability to supervise compliance with them. JA1465. This Court has twice affirmed the Injunctions; this Court has also affirmed that financial institutions that process Exchange Bond payments are potentially subject to liability under Federal Rule of Civil Procedure 65(d)(2) if they facilitate a prohibited payment by Argentina. *NML II*, 727 F.3d at 238-39.

The Supreme Court denied Argentina's certiorari petitions, first on October 7, 2013, and most recently on June 16, 2014. With the latter denial, the stay this Court had entered pending further review expired, and on June 18 this Court entered an order confirming as much. JA1788.

### B.    Citibank's Motion For Clarification

Appellant Citibank, N.A. ("Citibank"), maintains custody accounts for customers in Argentina, and acts as the custodian for certain Argentine bonds payable in U.S. Dollars and governed by Argentine law. For simplicity's sake, we

refer to these bonds as "Argentine Law Bonds."  Citibank operates in Argentina, in relevant part, through a branch of the U.S.-chartered bank that is located (indeed, headquartered) in New York.  Accordingly, there is no dispute that the district court has personal jurisdiction over Citibank for all purposes.

It is undisputed that Argentina issued billions of dollars' worth of Argentine Law Bonds "in connection with its 2005 and 2010 exchange offers."  Arg. Br. 4. Those Argentine Law Bonds that were issued in the 2005 and 2010 exchange offers are therefore Exchange Bonds as defined in the Injunctions.  We refer to those bonds as "Argentine Law Exchange Bonds."  Citibank acknowledges that some portion of the Argentine Law Bonds are, in fact, also Argentine Law *Exchange* Bonds.  Citi Br. 6 ("The Argentine Law Bonds, some of which are also Exchange Bonds, . . . .").

On May 22, 2013, Citibank "moved for clarification that the Injunctions did not apply to its payments on the Argentine Law Bonds."  Citi Br. 13.  The district court denied Citibank's motion for clarification due to the pendency of the appeals of the Injunctions.  On June 19, 2014, after the expiration of the stay, Citibank "renewed its motion" for clarification.  *Ibid.*

Citibank argued that "[t]he [Injunctions] should not be *construed*, as a matter of law, to enjoin payments by Citibank Argentina on Argentine Law Bonds to customers for whom it acts as custodian in Argentina."  Mem. In Support of

6

Citibank, N.A.'s Renewed Mot. for Clarification or Modification at 24, No. 08-6978 (S.D.N.Y. July 1, 2014) (Dkt. No. 550) ("Citibank Renewed Mot.") (emphasis added); see *id.* at 8 ("The [Injunctions] should not be *interpreted* to" apply to Argentine Law Bonds.) (emphasis added).  Among other things, Citibank argued that the Injunctions should not be construed to apply to Argentine Law Exchange Bonds because payments on those bonds were not made through Bank of New York Mellon (BNY), but are instead made entirely within Argentina.  *Id.* at 3-4.[1]  Citibank therefore asked the district court to clarify that Citibank could make payments on the Argentine Law Bonds, the next payment on which was scheduled for June 30, 2014.

The district court initially agreed with Citibank's interpretation—in part based on Citibank's suggestion, made at a hearing on the motion, that the

---

[1] In the course of proceedings before the district court, it was revealed that—contrary to Appellants' assertions that the payment process takes place "entirely in Argentina," Citi Br. 6—certain entities involved in payment on many of these bonds use bank accounts located in New York.  For example, JPMorgan Chase Bank, N.A. (JPMCB), submitted a letter to the district court stating that, after receiving a payment from the Republic, the Argentine securities depository Caja de Valores S.A. "transfers those funds to an account with JPMCB in New York, and, in the normal course, instructs JPMCB to wire payments to Caja's clients." JA2177-78.  Euroclear Bank SA/NV also sent a letter to the district court stating that its cash account in "New York is credited with the funds (USD) related to the Argentine Law Bonds."  Letter from Paul T. Shoemaker to Judge Griesa, at 1, No. 08-6978 (S.D.N.Y. July 25, 2014) (Dkt. No. 607); see Reply Decl. of Fabien Debarre, at 5, No. 08-6978 (S.D.N.Y. July 21, 2014) (Dkt. No.  595).

7

Argentine Law Bonds had been treated "completely differently" from the bonds that were subject to the Injunctions. JA1839-40. Thus, on June 27, 2014, the district court issued an "Order Clarifying Amended February 23, 2012 Orders"—the order that Citibank refers to in its briefs as the "Citibank Clarification Order" (Citi Br. 14). In that order, the district court "CLARIFIED that this Court's Amended February 23, 2012 Orders do not as a matter of law prohibit payments by [Citibank] on [the Argentine Law Bonds]." JA1852; see Citi Br. 14. As discussed further below, the district court's temporary agreement with Citibank's interpretation of the Injunctions was short-lived.

### C.    Appellees' Motion For Partial Reconsideration

Appellees sought partial reconsideration of the district court's June 27 order. Appellees explained that, contrary to Citibank's suggestion at the hearing on the clarification motion, the U.S.-dollar-denominated Argentine Law Exchange Bonds had *not* previously been "treated differently" from other Exchange Bonds. Appellees further explained that the U.S.-dollar-denominated Argentine Law Exchange Bonds are "External Indebtedness" under the FAA (and thus subject to the FAA's equal-treatment provision), and are "Exchange Bonds" within the meaning of the Injunctions. Thus, the Injunctions, by their plain terms, apply to the U.S.-dollar-denominated Exchange Bonds that are Argentine Law Bonds—in other words, Argentine Law Exchange Bonds are within the scope of the

8

Injunctions as originally imposed by the district court and as twice affirmed by this Court.[2]   On July 22, the district court convened a hearing on the motion for reconsideration and took the matter under advisement.

On July 23 Citibank filed a letter stating that it had just "been advised" of a *second* category of Argentine Law Bonds that had not previously come up: bonds Argentina issued in April 2014 to settle claims following Argentina's expropriation of the Spanish energy company Repsol's stake in YPF (an Argentine oil and gas firm).   See JA2174-76.   Citibank explained that the Injunctions define "Exchange Bonds" as bonds that were "issued as part of the 2005 or 2010 Exchange Offers." JA2175 (citing JA1462 (Injunctions ¶ 2(a)).   Citibank therefore stated that the bonds issued to Repsol are not Exchange Bonds because they were not issued as part of the 2005 or 2010 exchange offers.   *Ibid.*

But there was a wrinkle:  When issuing the bonds to Repsol in April 2014— more than two years after the Injunctions were first issued and approximately half a year after this Court affirmed them in full—Argentina *chose* to assign them the same International Securities Identification Number (ISIN) used by one series of Argentine-law, U.S.-dollar Exchange Bonds.   JA2175.   (This ISIN ends with the

---

[2]  In response to Citibank's assertion that the Injunctions should not reach Exchange Bonds paid in Argentine pesos rather than a foreign currency, Appellees consented to orders permitting those payments.   Those orders have been entered and are not challenged on appeal.

9

digits "113," so for convenience we refer to it below as the "113 ISIN".) [3]  Seeking to capitalize on Argentina's action, Citibank argued that the Injunctions should not apply to *any* Argentine-law, U.S.-dollar bonds because the bonds it issued to Repsol with the 113 ISIN are "identical" to and "fungible" with earlier-issued Exchange Bonds.  *Ibid.*   Argentina's unilateral actions in April 2014, Citibank argued for the first time in late July 2014, are a reason to shrink the scope of the Injunctions entered and affirmed long before.

Citibank's letter did not explain, however, the circumstances in which those bonds were issued to Repsol, such as (i) whether Repsol agreed to accept these bonds knowing that they shared the 113 ISIN with an Exchange Bond series subject to the Injunctions (it did); (ii) whether Repsol and Argentina were aware that the Argentine Law Exchange Bonds bearing the 113 ISIN might be covered by the Injunctions (they were); (iii) whether Argentina had the option of issuing bonds under a different ISIN (it did); (iv) whether the settlement was structured to ensure that Repsol would be able to realize a certain amount of proceeds from selling the bonds (it was); (v) whether Repsol successfully completed that sale and thereby rendered the settlement final (it did); and (vi) whether those buyers knew that the

---

[3] The series of bonds with the 113 ISIN is just one of five series of Argentine Law Exchange Bonds.  The other four series have distinct ISINs, and thus, even under Appellants' view, are not implicated by any alleged confusion regarding the 113 ISIN.  See JA3145.

bonds shared the 113 ISIN with an enjoined Exchange Bond series and paid a price reflecting that uncertainty (they did).  In short, Citibank's letter offered no information relevant to determining whether it was equitable—indeed, fully *expected* by the parties to the Repsol transaction—that these bonds would be subject to the Injunctions.

On July 27, Argentina also filed a letter with the district court in which it claimed—for the first time—that *still more* Argentine-law, U.S.-dollar bonds had not been issued at the time of the 2005 or 2010 exchanges.  JA2180-81.  Argentina stated that, because those newly disclosed bonds also had not been issued in the 2005 or 2010 exchange offers, they too are not "Exchange Bonds" within the meaning of the Injunctions.  *Ibid*.  The Republic argued that the district court therefore "did not *intend* the Injunctions" to cover those newly disclosed bonds. JA2181 (emphasis added).

Argentina's letter—like Citibank's post-hearing missive—was noticeably short on substance.  For example, Argentina did not reveal whether most of those bonds were issued directly to the state-owned pension fund (ANSES),[4] instead

---

[4] In its Form 18-K filed with the SEC on September 30, 2011, Argentina reported having issued approximately $3.1 billion in "Foreign currency-denominated debt" in "Intra-Public Sector Issuances."  Form 18-K, Sept. 30, 2011, at 158, http://www.sec.gov/Archives/edgar/data/914021/000090342311000486/roa-18k_0928.htm.

leaving the district court to infer that most of these hard-to-identify bonds were initially sold on the open market.  Nor did Argentina explain whether ANSES still holds vast quantities of these bonds (we believe it does—the latest ANSES quarterly report lists $4.37 billion in Argentine law "discount" bonds, the vast majority of which are likely the very bonds about which Argentina now complains).[5]  And Argentina did not indicate whether ANSES had sold any of these bonds into the open market after the Injunctions were issued, such that third-party purchasers would have bought them with the knowledge that they shared the 113 ISIN with an enjoined Exchange Bond series (we suspect ANSES has done so).  All of this information—whether Argentina effectively sold these bonds to itself, continues to own them, and sold them to third parties with knowledge of the Injunctions—would be highly relevant to the district court's exercise of discretion.

Thus, the proceedings up to this point had focused exclusively on a single category of Argentine Law Bonds—the Exchange Bonds that were issued in the 2005 or 2010 exchange offers.  Only *after* full briefing on Citibank's clarification motion and Appellees' motion for reconsideration—and two hearings before the

---

[5] ANSES's report for the second quarter of 2014 claims holdings of 35.519 billion pesos' worth of Argentine law, U.S. dollar-denominated discount bonds. ANSES Quarterly Report, June 30, 2014, at 6, Table 1-3, http://fgs.anses.gob.ar/archivos/secciones/segundotrimestre2014.pdf.  At the foreign exchange rate for June 30, 2014, that works out to $4.37 billion U.S. dollars.

district court—did Appellants mention these two additional categories of Argentine Law Bonds.

Even then, Appellants provided the district court with none of the necessary details pertaining to those bonds.[6]  Nonetheless, Citibank and Argentina declared that it would be impossible to distinguish between the Exchange Bonds issued in the 2005 and 2010 exchanges and *any* of those newly disclosed Argentine Law Bonds.  Therefore, Appellants suggested, the Injunctions should not apply to *any* Argentine Law Bonds.  Appellants did not even confine their request to the series of Argentine Law Bonds that used the 113 ISIN.  Rather, they demanded that all Argentine Law Bonds be excised from the Injunctions, including four series of bonds that *do not* use the 113 ISIN.

## D.    The July 28 Order

In its July 28 Order, the district court "rescind[ed]" its "June 27, 2014 order granting [Citibank's] motion for clarification."  JA2195-96.  Thus, the July 28 Order clarified that, contrary to Citibank's suggested interpretation, the Injunctions

---

[6] According to Appellants, the dollar amount of each of the three categories of Argentine Law Bonds is as follows: (1) Exchange Bonds issued in the 2005 and 2010 exchange offers: $2.3 billion; (2) Bonds issued to Repsol and that were not issued in the 2005 and 2010 exchange offers: $1.75 billion; and (3) other bonds that also were not issued in the 2005 and 2010 exchange offers: $4.35 billion.  Arg. Br. 4, 24-25.  Even if those dollar values are correct, they pertain to all Argentine Law Bonds—not just the one series of Argentine Law Bonds with the overlapping ISIN.

13

do apply to *all* Exchange Bonds that were issued in the 2005 and 2010 exchange offers—irrespective of whether those Exchange Bonds are also Argentine Law Bonds. The district court, however, allowed Argentina to make a "one-time payment on the dollar-denominated exchange bonds." JA2196. The district court thereby permitted the June 30, 2014, payment to be made. The district court explained that it granted that reprieve solely because it did "not wish to upset the settlement with Repsol." *Ibid.*

But the district court made *no ruling* on how it would address the newly disclosed bonds—*i.e.*, the bonds issued to Repsol or the other Argentine Law Bonds mentioned in Argentina's July 27 letter—going forward. Rather, the July 28 Order stated that, "[t]o avoid further confusion, the parties are directed to devise a way to distinguish between the Repsol bonds and the exchange bonds before the next interest payment is due." JA2196.[7] Thus, the sole ruling in the July 28 Order is the district court's clarification that the Injunctions continue to apply to the Argentine-law, U.S.-dollar-denominated Exchange Bonds; further

---

[7] On August 29, 2014, Appellees sent a letter to Appellants asking them to address the factual issues that will be relevant to the district court's exercise of discretion. As discussed below (and in NML's brief), Appellees will explain to the district court in future proceedings why no modification to exclude the bonds issued to Repsol is necessary or appropriate. The district court should have the opportunity to consider those circumstances and rule on that issue in the first instance.

14

proceedings are necessary to address whether additional action is necessary or appropriate to address Appellants' belated concerns about *other* bonds.

## STANDARD OF REVIEW

This Court "must independently determine as a threshold matter" that it has appellate jurisdiction. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 178 (1988); see *Arnold v. Lucks*, 392 F.3d 512, 517 (2d Cir. 2004) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction.") (internal quotation marks omitted). To the extent the July 28 Order is construed as a ruling on "modification," Citibank concedes that this Court reviews such action only for abuse of discretion. Citi Br. 18.

## SUMMARY OF ARGUMENT

This Court lacks jurisdiction over this appeal.

I.   Appellants assert that this Court has appellate jurisdiction under 28 U.S.C. § 1291. But the July 28 Order is not a "final decision," as required by Section 1291. Litigation on this issue is still pending in the district court, and the July 28 Order itself expressly contemplates additional proceedings.

II.   Nor is the July 28 Order an interlocutory order appealable under 28 U.S.C. § 1292(a)(1).

A.1.   An order *modifying* an injunction (or denying a proper request to modify) is appealable, but an order *clarifying* an injunction is "not appealable."

15

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005). The July 28 Order simply clarifies that the Injunctions, by their own terms, have *always* applied to all U.S-dollar-denominated Exchange Bonds (whether or not they are issued under Argentine Law). Because the July 28 Order does not "substantially change[] the terms and force of the injunction[s]," it is merely a clarification, not a modification, of the Injunctions. *Id.* at 142 (internal quotation marks omitted).

2. The July 28 Order is not a "refusal to modify" an injunction either. Neither Appellant ever invoked Federal Rule of Civil Procedure 60(b)—the basis of any proper request to modify the fully affirmed Injunctions. To the contrary, Citibank's motion for clarification asked the district court to "*construe*" the Injunctions in a particular way (which the district court declined to do)—not to modify them. In any event, Citibank never explained how Appellants could possibly meet the high standard for modification embodied in Rule 60(b).

B. Even if this Court concludes that the July 28 Order was an appealable "refusal to modify" the Injunctions' general application to Argentine Law Exchange Bonds, the district court issued no ruling on the applicability of the Injunctions to the Argentine Law Bonds that were *not* issued through the 2005 and 2010 exchange offers. In these appeals, Citibank and Argentina make much ado about how the Injunctions may affect these *other* categories of bonds, but the

16

district court has yet to rule on whether or how the Injunctions should be modified in those regards. Rather, the July 28 Order expressly contemplates additional proceedings before reaching a determination, and those proceedings can be completed prior to the next payment (December 31, 2014) on the Argentine Law Bonds that Appellants claim are not Exchange Bonds. This Court therefore lacks jurisdiction over Appellants' arguments pertaining to the other Argentine Law Bonds, which are not the subject of *any* ruling, much less an appealable one.

III.    Finally, and in any event, this Court's prior decision in *NML II* confirms that Citibank's appeal is "premature." This Court recognized that a third party's argument that it could not or should not be punished by a U.S. court for helping Argentina violate the Injunctions should be raised, if at all, in a contempt hearing. It is not a reason to challenge the *validity* of Injunctions, which have twice been upheld by this Court.

If Citibank actually pursues its arguments in the proper forum, it will be clear that Citibank's arguments rest on the false premise that there is an unresolved conflict between U.S. and Argentine law. The FAA and this Court's prior opinions in this case make abundantly clear that the Injunctions are valid—and that Argentina's decision to submit to jurisdiction in U.S. courts means that Argentine law must yield in relevant respects to U.S. law. Citibank, moreover, made the choice to support Argentina's efforts to defy the Injunctions. Indeed, Citibank has

17

now proclaimed that it will process Argentina's payments on the Exchange Bonds *irrespective* of how this Court rules in this appeal. Having made that choice, Citibank must live with its consequences. Neither Citibank nor Argentina is entitled to advance permission from this Court to violate the Injunctions.

## **ARGUMENT**

## I.    THIS COURT LACKS APPELLATE JURISDICTION UNDER 28 U.S.C. § 1291

Appellants assert that this Court possesses appellate jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction over appeals from "final decisions" of the district courts. But a "final order is an order of the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005) (citation and internal quotation marks omitted). An order "is not considered final unless it disposes of all claims against all parties." *Kamerling*, 295 F.3d at 213. It is unremarkable that "many postjudgment orders will involve ministerial or discretionary matters that are effectively unreviewable." 15B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 3916 (2d ed. 1992).

The July 28 Order is not final by any stretch of the imagination. This litigation—indeed, this very issue—is still pending and active in the district court, and further proceedings are expressly contemplated by the July 28 Order. The

18

district court has issued multiple orders in this case *since* the July 28 Order—including a ruling just last week declaring that the Republic's latest attempt to sidestep the Injunctions is unlawful, which (as explained below (*infra* 49-50) and in NML's brief (at 31-34)) is highly relevant to the very accommodations Appellants are seeking in this appeal.   Minute Entry, No. 08-6978 (S.D.N.Y. Aug. 21, 2014).   The district court has hardly "disassociate[d] itself from" the case. *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 66 (2d Cir. 2011) (internal quotation marks omitted).

Because "there has not been a finding of contempt, much less an assessment of sanctions, the order is not 'final'" and accordingly an appellant cannot use "28 U.S.C. § 1291 as a basis of jurisdiction." *Wilder v. Bernstein*, 49 F.3d 69, 72 (2d Cir. 1995).   Consistent with *Wilder*, other courts too have held that denial of a motion for clarification of an injunction, without "imposing noncontingent contempt sanctions," is not a final judgment, but rather an order that does "not alter the status quo." *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010).

Nor is the July 28 Order appealable under the collateral order doctrine.   See *Thomas*, 594 F.3d at 831.   That is because, at least, other avenues for appellate review remain, notably to violate the order and "incur court-imposed sanctions"

19

via a "contempt citation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009).

## II.   THIS COURT LACKS APPELLATE JURISDICTION UNDER 28 U.S.C. § 1292

Appellants also contend that this Court has jurisdiction under 28 U.S.C. § 1292(a)(1), which confers appellate jurisdiction over interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1); see Arg. Br. 2-3. "Section 1292(a) is an exception to the general rule of finality stated in § 1291 and, as such, should be construed narrowly." *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 279 (2d Cir. 2000). "As the Supreme Court has noted, § 1292(a)(1) must be approached 'somewhat gingerly lest a floodgate be opened,'" inundating the courts with interlocutory appeals in cases involving injunctions. *Gautreaux v. Chi. Hous. Auth.*, 178 F.3d 951, 957 (7th Cir. 1999) (quoting *Switz. Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966)). A flood of appeals in the Argentina-related litigation over which Judge Griesa has long presided would be the inevitable—and, we respectfully submit, unwelcome—result if this Court were to determine that it has jurisdiction over this premature interlocutory appeal. In any event, settled law shows that this Court lacks jurisdiction.

Construed narrowly or otherwise, Section 1292 does not provide this Court with appellate jurisdiction over the July 28 Order. First, because the July 28 Order

is merely a clarification of the Injunctions, rather than a modification of (or denial of a proper motion to modify) the Injunctions, it is not an appealable order. Second, even if the July 28 Order is construed as appealable as to the general proposition that the Injunctions cover Argentine Law Exchange Bonds, the Order simply did not rule on the Argentine Law Bonds that were not issued through the 2005 and 2010 exchange offers.  Thus, this Court has no jurisdiction over the district court's handling of issues related to those *other* Argentine Law Bonds for the simple but dispositive reason that *the district court has yet to rule on them*.

### A.    The July 28 Order Is Not Appealable Under Section 1292(a) Because It Neither Modified Nor Refused To Modify An Injunction

An interlocutory order *modifying* (or refusing to modify) an injunction is appealable under Section 1292, but "[a] mere *clarification* of an injunction is not." *Mikel v. Gourley*, 951 F.2d 166, 168 (8th Cir. 1991) (emphasis added); see *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) ("An order reconsidering or interpreting a preliminary injunction consequently is not appealable."); *Wilder v. Bernstein*, 49 F.3d 69, 72-73 (2d Cir. 1995).[8]  The July 28 Order did only the latter, and is therefore not appealable under Section 1292(a).

---

[8] See also *Aevoe Corp. v. AE Tech Co., Ltd.*, 727 F.3d 1375, 1383 (Fed. Cir. 2013) ("an order interpreting an injunction" is not appealable (citing *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir. 1984) (collecting cases)); *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 845 (D.C. Cir.

### 1. The July 28 Order Did Not Modify, But Merely Clarified, The Existing Injunction

"Whether an order interprets or modifies an injunction is determined by its actual effect," not how the parties characterize the order. *Weight Watchers*, 423 F.3d at 141. A clarification of an injunction "does not alter the status of the parties, but merely restates that relationship in new terms." *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1154 (10th Cir. 2007) (internal quotation marks omitted). A modification, on the other hand, "either alters the legal relationship between the parties or substantially changes the terms and force of the injunction." *Ibid.* (internal quotation marks omitted); see *Weight Watchers*, 423 F.3d at 141.

---

2012) (order not appealable because it was "a clarification, not a modification" of an injunction); *Thomas*, 594 F.3d at 832 ("[T]he distinction between an order clarifying an underlying injunction and an order modifying an injunction is of crucial importance, as only the latter is an appealable order."); *Birmingham Firefighters Ass'n 117 v. Jefferson Cnty.*, 280 F.3d 1289, 1294 (11th Cir. 2002) ("[I]t is evident that the order the [plaintiff] seeks to appeal did not 'modify' the injunction, and thus we have no jurisdiction under § 1292(a)(1)."); *Gautreaux*, 178 F.3d at 956 ("mere clarification or reiteration of a standing injunction . . . does not fall within the scope of § 1292(a)(1)"); *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1154 (10th Cir. 2007) ("Appellate courts do not have jurisdiction to review a district court order that merely interprets or clarifies, without modifying, an existing injunction."); *In re Complaint of Ingram Towing Co.*, 59 F.3d 513, 516 (5th Cir. 1995) ("[I]nterlocutory appeals are not allowed when a court merely *enforces or interprets* a previous injunction."); *Major v. Orthopedic Equip. Co., Inc.*, 561 F.2d 1112, 1114-15 (4th Cir. 1977) (an order providing an "interpretation" of an injunction in response to "a motion for clarification of the injunction" is not appealable).

22

Significantly, when determining whether an order is a clarification or a modification, courts "should *not* analyze the injunction and the order in detail." *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 280 F.3d 1289, 1293 (11th Cir. 2002) (emphasis added). "To plunge into the details would collapse the jurisdictional inquiry into a decision on the merits, thwarting the purpose of § 1292(a)(1)," which is "deliberately careful in limiting the availability of interlocutory review of orders concerning injunctions." *Ibid.* Thus, "if the order does not either by its terms or by the court's *blatant or obvious misinterpretation* of the injunction effect such a change in relationship" between the parties, "then it is not a modification, and [the Court does] not have jurisdiction over the attempted interlocutory appeal." *United States v. Philip Morris USA Inc.*, 686 F.3d 839, 845 (D.C. Cir. 2012) (emphasis added); see *Pimentel & Sons*, 477 F.3d at 1154 (only "gross or blatant misinterpretations of the earlier injunction can substantially alter the legal relationship of the parties"); *Scipar, Inc. v. Simses*, 354 Fed. App'x 560, 562 (2d Cir. 2009) (dismissing appeal of an order defining a term in the injunction because the order "did not constitute an obvious misinterpretation of the injunction").

The July 28 Order is plainly a clarification under that standard. To begin with, the July 28 Order, by its terms, does not "alter" anything about the Injunctions or the relationship among the parties going forward. Rather, it just

23

settles an *interpretive* question—an interpretive question posed by Citibank itself. In its motion for clarification, Citibank argued that "there is nothing in the Court's opinion or the terms of the [Injunctions] to suggest that the Argentine Law Bonds were within the contemplation of the parties or the Court." Citibank Renewed Mot. 6. Thus, Citibank argued, the Injunctions "should not be *construed*, as a matter of law, to enjoin payments by Citibank Argentina on Argentine Law Bonds." *Id.* at 24 (emphasis added). At the district court's hearing on its motion for clarification, Citibank again stressed that, because (in its view) the Argentine Law Bonds had been treated "[c]ompletely differently" "all along" under the Injunctions, it was simply asking the district court to apply the Injunctions faithfully. JA1839-40.

Appellees disagreed, explaining that the Argentine Law Bonds are, and always have been, "unquestionably Exchange Bonds as defined by the [Injunctions]." Plaintiffs' Opp. to Citibank Renewed Mot., at 6, No. 09-8757 (S.D.N.Y. June 26, 2014) (Dkt. No. 396). In its July 28 Order, the district court simply chose between those competing interpretations, and made clear that the Injunctions, as written, *always* applied to all U.S.-dollar-denominated Exchange Bonds—including those that are Argentine Law Bonds. "Thus, the District Court did not change the legal relationship between the parties or impose new obligations on [the parties], but instead clarified that under the existing" Injunctions, the

24

Argentine Law Bonds qualify as Exchange Bonds. *Pimentel & Sons*, 477 F.3d at 1155; see *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1020 (2d Cir. 1975) (an order that does not "modif[y] the terms of" an already-issued injunction but simply permits or forbids "an expenditure in accordance with the provisions of these previous orders" is not "appealable").

*Weight Watchers* further illustrates the point. There, this Court asserted jurisdiction over an order modifying an injunction pertaining to a food manufacturer's use of the term "Points," a Weight Watchers trademark. In concluding that the order was not a mere clarification, this Court relied on a combination of several factors, none of which is applicable here: (1) the initial injunction "was *entirely hypothetical* in that neither Weight Watchers nor the district court knew how [the manufacturer] might use the Points mark in the future," 423 F.3d at 142 (emphasis added); (2) the disputed portion of the injunction "did not restrain any party from doing *anything* and was vague with regard to how it might be satisfied," *ibid.* (emphasis added); (3) the plaintiff moved for a modification as a result of changed circumstances—a new package, with new labeling, *id.* at 140; (4) the modification motion raised an entirely "different question" (*i.e.*, whether the new packaging was sufficient to avoid confusing customers), *id.* at 143; and (5) the modification order imposed new conditions

25

relating to issues that were not even addressed in the initial injunction, such as a prohibition on using small print, *id.* at 141.

Courts of appeals have routinely held that, when a district court simply states that an existing injunction has always applied in a particular context—even (as Appellants erroneously asserted here) when that context was unanticipated—it clarifies rather than modifies the injunction. In *Wilder v. Bernstein*, for example, this Court held that the district court merely clarified a consent decree when it interpreted the decree's reference to "all" children in foster care to apply to children in kinship foster care—even though the parties did not contemplate kinship foster care. 49 F.3d at 73. In *Mikel v. Gourley*, the Eighth Circuit similarly held that the district court "merely clarified what [a] permanent injunction" relating to claims for welfare benefits "meant by 'claimant delay' in light of the current availability of telephone hearings," which did not exist at the time the injunction was written. 951 F.2d at 169. As in those cases, the district court here did no more than clarify that a defined term in the Injunctions— "Exchange Bonds"—applies to the Argentine Law Bonds issued in the 2005 and 2010 exchange offers. As discussed further below, moreover, if Citibank believes that the Injunctions do not prohibit it from facilitating Argentina's payments on Exchange Bonds, that is an argument it should make as a defense in contempt proceedings.

26

Appellants, of course, assert that the district court's interpretation is *erroneous*—and that the district court therefore modified the Injunctions when it explained that the Injunctions apply to all Exchange Bonds. For example, Argentina asserts in its jurisdictional statement that the July 28 Order is an 'order modifying an injunction.'" Arg. Br. 2 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). Of course, an appellant's mere allegation that an order has modified an injunction cannot vest this Court with jurisdiction. See *Weight Watchers*, 423 F.3d at 141. "Otherwise, appellate courts would be deluged with interlocutory appeals from every litigant dissatisfied with a district court's interpretation of its injunctions." *Gautreaux*, 178 F.3d at 957.

Instead, for jurisdictional purposes courts "ask not whether the district court's reading of the [injunction] is *in error*, but whether it is a *gross misinterpretation* of the [injunction's] original command." *Birmingham Fire Fighters Ass'n*, 280 F.3d at 1293 (emphasis added). Only such "gross misinterpretations" rise to the level of an appealable modification of an injunction. That is a high jurisdictional hurdle—and one that Appellants have not attempted to clear and cannot clear.

Here, the district court's clarification of the Injunctions is not a misinterpretation at all—much less one that "leaps from the page." *Ibid.* To the contrary, as discussed in greater detail in NML's brief (at 23-29), the district

27

court's July 28 Order "is a straightforward interpretation of the injunction's plain language." *Pimentel & Sons*, 477 F.3d at 1154. Paragraph 2(a) of the Injunctions expressly defines "Exchange Bonds" as (in relevant part) "bonds or other obligations *issued pursuant to the Republic's 2005 or 2010 Exchange Offers.*" JA1462 (emphasis added). And, as Appellants concede, "the Republic issued 2.3 billion worth of Argentine Law Bonds *in connection with its 2005 and 2010 exchange offers.*" Arg. Br. 4 (emphasis added); see Citi Br. 6 (referring to "[t]he Argentine Law Bonds, some of which *are also Exchange Bonds*") (emphasis added).

Thus, the July 28 Order simply confirms that the Injunctions meant what they said: Because the Argentine Law Bonds were "issued pursuant to the Republic's 2005 or 2010 Exchange Offers," they fall squarely within the Injunctions' definition of "Exchange Bonds."[9] JA1462. This Court has already said as much: "By their terms . . . the amended (and original) injunctions require payment to plaintiffs *whenever* Argentina pays on 'Exchange Bonds'" as defined in the Injunctions. *NML II*, 727 F.3d at 241 n.9 (emphasis added). Argentina

---

[9] Indeed, in Citibank's July 23, 2014, letter to the District Court, it acknowledged that Paragraph 2(a) of the Injunctions "*define[s]* 'Exchange Bonds'"—and that the bonds issued in the 2005 and 2010 offer and "that were the subject of Citibank's [clarification] motion . . . *are* Exchange Bonds." JA2175 (emphasis added).

asserts that this Court has jurisdiction under Section 1291 "because the July 28 Order is itself a new permanent injunction."  Arg. Br. 3.  Because the July 28 Order does not even modify the Injunctions—but merely clarifies the injunctions— it follows *a fortiori* that the Order does not constitute a "new permanent injunction."  Nor does calling the July 28 Order the "Citibank Injunction," as Citibank does (see, *e.g.*, Citi Br. 1) alter that conclusion.

### 2.  The July 28 Order Is Not Appealable As A Refusal To Modify An Injunction Because Appellants Sought No Such Modification

Nor is the July 28 Order an order "refusing" to modify the Injunctions.  28 U.S.C. § 1292(a)(1).  Citibank did style its renewed motion as a motion for "Clarification or Modification," after having more candidly styled its initial motion as a "Motion for Clarification."  Citibank, N.A.'s Notice of Mot. for Clarification, No. 08-6978 (S.D.N.Y. May 22, 2013) (Dkt. No. 459).  As noted above, however, tossing the word "Modification" into the caption does not suffice.  *Weight Watchers*, 423 F.3d at 141.  Moreover, as we explained in the district court, Citibank—which was not even a "party" eligible to seek Rule 60(b) relief in the first place, *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir. 1982); *Nat'l Acceptance Co. of Am., Inc. v. Frigidmeats, Inc.*, 627 F.2d 764, 766 (7th Cir. 1980); see NML Br. 35—did not even *mention* Rule 60(b) (or any other

29

authority for modification) in its motion for "Clarification or Modification," much less demonstrate that it would be entitled to relief under that rule.

"[A] court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, *i.e.,* a significant change in the law or facts." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). "The party seeking relief" must "establish[] that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009).

Citibank's motion didn't just flunk that test—it failed even to attempt to argue that there was a change of circumstances that would evoke a grievous wrong and therefore support a modification of the Injunctions. Citibank did not contend that the Argentine Law Exchange Bonds issued in 2005 and 2010 were somehow "new" conditions warranting relief from Injunctions entered in 2012. Rather, as noted, it argued that the 2012 Injunctions *always* excluded Argentine Law Bonds issued in 2005 and 2010. See Citibank Renewed Mot. 6; Arg. Br. 10. That is a request to clarify, not to modify.[10] To hold otherwise would effectively convert

_____

[10] The District Court treated it as such. Its June 27, 2014, Order responding to Citibank's motion is entitled "Order Clarifying Amended February 13, 2012 Orders." JA1851. In that Order, the District Court expressly "CLARIFIED that this Court's Amended February 23, 2012 Orders do not as a matter of law prohibit payments by Citibank, N.A's Argentine branch" on Exchange Bonds governed by Argentine law. JA1852. It is therefore scarcely surprising that, in its briefing before this Court, Citibank repeatedly refers to its motion for "clarification"—and to the District Court's "Clarification Order." Citi Br. 1, 4, 13, 14, 15, 40, 46.

*every* clarification that a movant does not like into a refusal to modify an injunction, in violation of this Court's admonition to construe Section 1292 "narrowly." *Thypin Steel Co.*, 215 F.3d at 279. Section 1292's "modification" provision cannot serve "as a back door to appellate review of every administrative clarification the district court makes." *Gautreaux*, 178 F.3d at 957.

Nor is the July 28 Order a "continu[ation]" of an injunction under Section 1292(a)(1). "Continuation in this context means a refusal to modify an injunction even though circumstances have changed since its entry. A waiver request made pursuant to the terms of the injunction itself does not constitute a request for a modification of the injunction. It rests on the terms of the injunction, not on changed circumstances." *United States v. W. Elec. Co., Inc.*, 777 F.2d 23, 29 (D.C. Cir. 1985).

**B.    Even If The July 28 Order Is Construed As A Refusal To Modify The Injunctions, The District Court Addressed Only Exchange Bonds, And Has Not Issued Any Ruling Regarding Any Other Argentine Law Bonds**

Appellants' briefs address three categories of Argentine Law Bonds: (1) bonds issued under the 2005 and 2010 exchange offers—*i.e.*, the "Exchange Bonds" that, as discussed above, fall squarely within the terms of the Injunction; (2) bonds *not* issued under the 2005 and 2010 exchange offers but instead issued to Repsol; and (3) other unnamed bonds that also were *not* issued under the 2005 and 2010 exchange offers. See Arg. Br. 24-25.

31

The Republic devotes the majority of its argument to the contention that the July 28 Order somehow expanded the Injunctions to the second and third categories of bonds—*i.e.*, to bonds allegedly not issued under the 2005 and 2010 exchange offers.  See Arg. Br. 24-30.  Citibank, too, argues the July 28 Order impermissibly enjoins payment on Argentine Law Bonds not issued under the 2005 and 2010 exchange offers.  See Citi Br. 26.

But the district court has *issued no ruling* as to how the Injunctions will affect those bonds.  The July 28 Order ruled only that the *Exchange Bonds* are subject to the Injunctions.  With respect to the bonds not issued in the 2005 and 2010 exchange offers, the district court stated only that "the parties are directed to devise a way to distinguish between the Repsol bonds and the exchange bonds before the next interest payment is due."  JA2196.  In other words, the district court cautiously *deferred* ruling on those bonds—and contemplated further proceedings before making any such ruling.  Thus, the only ruling even arguably before this Court is whether the Injunctions properly cover the Argentine Law Bonds issued in 2005 and 2010; if this Court concludes that the district court refused to modify the Injunctions, then it did so only with respect to those bonds. There is no order expressing any determination regarding the Injunctions' applicability to any *other* type of Argentine Law Bond.  Citibank and Argentina

32

therefore cannot claim that the district court either "modified" or "refused to modify" the Injunctions.

The district court's decision not to issue any ruling on those bonds is scarcely surprising, given that none of the briefs below even addressed them. Citibank's initial motion for clarification did not address those bonds. Citibank's renewed motion for clarification did not address those bonds. And Appellees' motion for reconsideration did not address those bonds. Rather, the parties focused *exclusively* on whether the Exchange Bonds issued in the 2005 and 2010 exchange offers are covered by the Injunctions.

The Republic suggests that Appellees somehow "raised" the issue in our motion for reconsideration. Arg. Br. 15 n.4. That assertion is baffling. Our reconsideration motion argued that the district court's initial Clarification Order erred in assuming that the *Exchange Bonds* issued in the 2005 and 2010 exchange offers were outside the scope of the Injunctions. We did not address the bonds that were not issued in the 2005 and 2010 exchange offers. Nor could we: As discussed below, those bonds were not even mentioned until Citibank sent its post-hearing July 23 letter to the district court. In any event, the Republic apparently concedes that there was no record evidence before the district court on the origin of any of the bonds that were not issued in the 2005 and 2010 exchange offers, and

33

even suggests that it would have been procedurally improper for the district court to consider those bonds in its clarification order. *Ibid.*

It was not until the day *after* the July 22 hearing on the motion for reconsideration that Citibank first informed the court by letter that it had "discovered" the bonds that Argentina had issued to Repsol back in April. Citi Br. 15-16; see JA2174-75. Four days later, the Republic followed with a bootstrapping letter of its own in which it claimed—without citation or explanation, and without offering any reason why it failed to raise the issue earlier—that still more of the Argentine Law Bonds "do not meet the definition of 'Exchange Bonds' covered by the [Injunction]." JA2181.[11]  Appellants asserted that, because the Republic assigned those bonds the same ISIN as the Exchange Bonds, it was impossible to differentiate among them.

But the district court was not required to respond to Appellants' bare allegations, made in letters submitted to the court at the thirteenth hour. The district court therefore properly confined its July 28 Order to the question actually

---

[11] The Republic's letter referenced the third category of bonds only obliquely. See JA2180 (stating that the fungible bonds "include" the bonds issued to Repsol). And, as noted, that passing reference was made for the first time in the letter that the Republic filed the day before the District Court issued the July 28 Order. That likely explains why the July 28 Order directs the parties to distinguish between the Exchange Bonds and the bonds issued to Repsol, and does not expressly cite the other, unnamed bonds.

submitted to it—clarifying whether the Injunctions applied to U.S.-dollar-denominated Argentine Law Exchange Bonds—and deferred addressing the bonds that were first raised in the letters.  Any ruling on those bonds will come only *after* the parties comply with the district court's directive to "devise a way to distinguish between" the Exchange Bonds and the bonds that were not issued in the 2005 and 2010 exchange offers and *after* any necessary facts are developed.

Instead of awaiting completion of those proceedings, Appellants brought this appeal.  And they allege that, because it is supposedly an "impossible task"  (Arg. Br. 17) to distinguish between the Exchange Bonds and the other Argentine Law Bonds sharing the 113 ISIN, they should not have to comply with the district court's order regarding the Exchange Bonds having the 113 ISIN (nor even, inexplicably, Exchange Bonds having four *other* ISINs).  If this is a problem at all, it is entirely of the Republic's own making, since it *chose* to issue new bonds that are supposedly "fungible" with certain of the Exchange Bonds.

But the larger problem is that Appellants are asking this Court (just as Argentina has unsuccessfully asked this Court in prior appeals) to sit as a trial court.  They want this Court to recognize—and credit—assertions for which there was no record or briefing in the district court, and upon which that court did not even rule.  If Appellants believe it would be impossible to distinguish among the categories of Argentine Law Bonds, they should explain to the district court how

35

exactly that situation came to be (as contemplated by the July 28 Order), rather than ask this Court to weigh in on a disputed factual issue that (if not forfeited by not having been made in 2012 or 2013) has not even begun to be litigated in the district court and remains pending there.

And this Court cannot possibly make an evidentiary determination based on Appellants' self-serving, unexplained, and untested "evidence." Appellants assert that the bonds here are "fungible," and that the July 28 Order therefore bars the Republic from making payments on bonds that have nothing to do with the 2005 and 2010 exchange offers. Moreover, Appellants believe the only remedy for possible confusion is to eviscerate the Injunctions by excluding Argentine Law Exchange Bonds from them. To the extent the issue is not forfeited, Appellees should be able to present the issue fully—with actual evidence, not bald assertions, and with careful consideration of any remedies that might be supported by that evidence—to the district court in the first instance, invoking Rule 60 and any other sources of law that may be applicable.

Among the issues that would require further development below (if the issues are not forfeited) are the following:

- Why were these issues not raised earlier, whether by Citibank in its motion for clarification or by Argentina in the two-and-a-half years these cases have been pending?

- What circumstances led to issuance of the bonds to Repsol with the same ISIN as a series of enjoined Exchange Bonds? It is our under-

36

standing that Repsol and Argentina agreed upon that condition and the associated risk that the bonds would be subject to the Injunctions, because Repsol wanted to be issued bonds that traded in a highly liquid market.  Indeed, Repsol's agreement with the Republic specifically addresses the possibility of "disruptive measures" being applied to these bonds—a thinly veiled reference to the operation of the Injunctions.  Surely it is relevant to the district court's discretion to know whether the parties *bargained for* the very "confusion" that Appellants claim is a reason to pare back the Injunctions.

- Is the Repsol settlement threatened in any way by the Injunctions? The district court allowed the June 30 payment on Argentine Law Bonds to go through because it did "not wish to upset the settlement with Repsol" and ordered the parties to discuss ways to avoid implicating the Repsol bonds in future payments.  But because the Repsol issue was raised by Appellants only after the briefing and argument— and in conclusory fashion—the district court appears to be unaware that the Repsol settlement has been final since Repsol successfully sold the bonds several months ago.[12]

- Under what circumstances were the "other" Argentine Law Bonds referenced in Argentina's posthearing letter issued?  Our understanding is that most, if not all, of these bonds were issued directly to ANSES, Argentina's state-owned pension fund.  We also understand that ANSES still holds many of these bonds, and that some of these bonds may have been sold into the public market *after* the Injunctions were issued.  Appellants suggest that innocent holders of billions of

---

[12] The Repsol settlement documents are readily available via Repsol's website. See Agreement for the Amicable Settlement and Compromise of Expropriation, Feb. 27, 2014, http://www.repsol.com/imagenes/es_en/Convenio_Argentina_en _tcm11-673555.pdf at 9 (compensation "shall be deemed to have taken complete effect" when Repsol sells the bonds).  Repsol's announcement that it had disposed of all the bonds (rendering the settlement final even if the Injunctions were to apply to the bonds Repsol had been issued) is likewise available. See Press Release, Repsol, Repsol Completes the Sale of its Argentinean Assets for $6.309 billion, May 23, 2014, http://www.repsol.com/es_en/corporacion/prensa/notas-de-prensa/ultimas-notas/23052014-repsol-finaliza-venta-activos-Argentina.aspx.

dollars of these bonds would be unfairly captured by the Injunctions, but the reality is likely that Argentina is simply paying most of this money to itself. That surely affects the equitable calculus in shaping the Injunctions; at a minimum, it offers the district court significant flexibility (beyond the flexibility already existing by operation of law and resulting from Appellants' tardiness in raising these issues) in crafting any appropriate remedy.

- Argentina asserts that the Argentine Law Exchange Bonds were issued in a purely "domestic" offering, perhaps to suggest that these bonds therefore should not fall within the Equal Treatment Provision of the FAA or the Injunctions. But that is flatly contradicted by Argentina's own public filings, which have repeatedly recognized that Argentine Law Bonds were part and parcel of the 2005 and 2010 exchanges and were offered internationally. See, *e.g.*, JA668 (Prospectus Supplement (Luxembourg Addendum), Jan. 10, 2005); Prospectus Supplement, Apr. 28, 2010 at S-14, http://www.sec.gov/Archives/edgar/data/914021/000090342310000252/roa-424b5_0428.htm; Form 18-K, Sept. 30, 2011 at 4, http://www.sec.gov/Archives/edgar/data/914021/000090342311000486/roa-18k_0928.htm; Registration Statement, Mar. 18, 2010 at 14, http://www.sec.gov/Archives/edgar/data/914021/000090342310000174/roa-sba2.htm ("Argentina will issue debt securities governed by New York law, English law or Argentine law.").

The district court should have the opportunity to address these issues with the benefit of full briefing and factual development. Indeed, that is why it is crucial that any party seeking modification of an injunction file a proper Rule 60(b) motion, submit the necessary supporting information, and allow its adversaries to respond accordingly.

It would be inappropriate for this Court to weigh in on these evidentiary disputes. And it is unnecessary because the district court has ample time to resolve them. The July 28 Order instructs the parties to devise a way to differentiate

38

among the bonds "before the next interest payment is due."  JA2196.  In their

motion to expedite briefing in this Court, Appellants conveyed the impression that

another interest payment was due on the Argentine Law Bonds that Appellants

contend are not Exchange Bonds on September 30.  That was false:  The *only*

bonds payable on September 30 are Exchange Bonds with distinct ISINs.  The next

interest payment on any so-called non-Exchange Bonds that are allegedly

"fungible" with Exchange Bonds will not occur until December 31.[13]  Appellants

will have the opportunity to be heard in the district court before then.

## III.   THIS COURT HAS PREVIOUSLY HELD THAT THE ISSUES PRESENTED IN CITIBANK'S APPEAL ARE "PREMATURE"

Citibank recognizes that, if the Injunctions apply to Argentine Law

Exchange Bonds, then Citibank's processing of unlawful payments would be

prohibited by operation of Rule 65(d)(2).  Citibank nonetheless contends that the

Injunctions should not be enforced against it, based on the supposed conflict

between Argentine law and U.S. law.  But this Court's August 23, 2013, decision

(*NML II*) recognized that arguments about whether the Injunctions *should* be

enforced against a particular third party are "premature" unless and until that third

---

[13] The only U.S.-dollar-denominated Argentine Law Bonds payable on September 30 are two series (ISINs ARARGE03E097 and ARARGE03G704) that are indisputably Exchange Bonds covered by the Injunctions.  The next payment on the bonds issued to Repsol and other Argentine Law Bonds is due December 31. Appellants have not disputed this point.  See, *e.g.*, Opp. of Plaintiffs-Appellees to Emergency Motions, at 14-15, No. 14-2689 (2d Cir. 2014) (Dkt. No. 43-1).

39

party faces contempt proceedings.  Citibank cannot seek advance permission to violate Injunctions that this Court has twice affirmed.

The prematurity of Citibank's argument is illustrated by the fact that it rests on a nonexistent conflict between U.S. law and Argentine law.  Both the Republic's contracts and this Court's prior opinions make abundantly clear that— as far as U.S. courts are concerned—Argentine law must yield to the district court's Injunctions.  Those facts would be fully revealed in the event Citibank ever reached a contempt hearing.

Even if Citibank is, as it alleges, caught between the Scylla of U.S. law and the Charybdis of Argentine maleficence, it has no one but itself and Argentina to blame.  For many years, Citibank has been aware of (and often been embroiled in) Argentina's disputes with holders of its defaulted bonds, including litigation surrounding the Injunctions.  At any point Citibank could have altered its business dealings so as to avoid the purported predicament of which it now complains. Instead, Citibank has regularly *chosen* to cooperate with the Republic and has continued to do so even as the Republic has repeatedly flouted and repudiated the Injunctions.  And now Citibank, too, has declared its intent to defy the Injunctions, and it has filed this (procedurally improper) motion, seemingly acting as Argentina's litigation surrogate.  Neither Citibank nor the Republic is entitled to equitable relief under these circumstances.

40

## A.    Citibank's Arguments Are Premature

Citibank contends that it would be unfair to punish it for Argentina's violation of the Injunctions and that the Injunctions should not in any event apply to payments on Exchange Bonds made within Argentina.  Citibank's arguments are similar to those that other nonparties made to this Court in *NML II*.  Those entities, too, argued that the Injunctions should not apply to them because the payment process for their securities takes place entirely outside the United States.[14]  This Court rejected that argument as "premature."  If those parties believed that they were beyond the jurisdiction of the district court, this Court explained, "they may assert as much *if and when* they are summoned to [the district court] for having assisted Argentina in violating United States law"—*i.e.*, in a contempt hearing. *NML II*, 727 F.3d at 244 (emphasis added); *cf. Wilder*, 49 F.3d at 72 (rejecting jurisdiction over an appeal from an order clarifying an injunction where "there has not been a finding of contempt").  But those arguments have nothing to do with the *validity* of the Injunctions, which "enjoin no one but Argentina, a party that has voluntarily submitted to the jurisdiction of the district court."  *Ibid.*

Consistent with this Court's opinions in *NML II* and *Wilder*, other circuits have held that an appeal cannot be taken from an order clarifying an injunction that

---

[14] As noted (*supra* 7 n.1), entities involved in payment on the Argentine Law Bonds use bank accounts located in New York.

does not hold anyone "in contempt or impose any sanction" because it "is not final." *Major*, 561 F.2d at 1115.  That is true even where, unlike here, "the opinion found that [a party] had violated the injunction." *Ibid.*  If a party would have to "take some further action before the court" in order "to have [the appellant] held in contempt," then the appeal in effect "ask[s] us to render an advisory opinion" and must be dismissed. *Id.*

So too here.  Citibank has declared its intent to defy the Injunctions by processing the Republic's illegal payments on Exchange Bonds (without a ratable payment on the FAA bonds).  If it believes that it should be permitted to assist Argentina in that manner because those payments occur only in Argentina, that is an argument it should make to the district court as an affirmative defense in a contempt hearing.  It is not a reason to challenge the *validity* of Injunctions that enjoin no one but Argentina and that have twice been upheld by this Court.  That is all the more so because, as discussed below, any alleged conflict between U.S. law and Argentine law is illusory.

## B.    As Far As U.S. Courts Are Concerned, There Is No Conflict Between Argentine Law And U.S. Law

The reason that Citibank does not wish to present these arguments in a contempt hearing is simple:  Its position that it is unfairly caught between Argentine law and U.S. law has already been rejected by this Court, and is also

42

inconsistent with its own contracts.  But fear of losing a contempt ruling is not a valid reason to seek advance permission to violate a court order.

By their terms, the Injunctions apply to all U.S.-dollar-denominated Exchange Bonds, including those that are Argentine Law Bonds.  Seeking to limit the clear reach of the Injunctions, Citibank contends that any conflict between Argentine and U.S. law should be resolved in favor of Argentina's "sovereignty," and against "extraterritoriality."  It further argues that it would simply be unfair to hold Citibank responsible for the sins of the Republic.  Each of those arguments is squarely foreclosed by the FAA and by this Court's opinion in *NML II*.

Citibank first suggests that the "principles of comity" and "foreign sovereignty" underlying the act-of-state doctrine bar application of the Injunctions to bond payments that the Republic *says* are legal.  Citi Br. 40.  But this Court has already rejected the argument that the Injunctions impermissibly "violate comity." *NML II*, 727 F.3d at 243.  And for good reason:  It is undisputed that, in the FAA, Argentina waived its sovereign-immunity defense and consented to jurisdiction in the courts of New York.  *Id.* at 237; JA404-05.  Thus, whatever resonance such "principles of comity" and "sovereignty" might have in another case, they are irrelevant here, where the sovereign in question deliberately *ceded* such portion of its sovereignty as would allow it to break (or enlist the aid of others in breaking) its promises.

43

The act-of-state doctrine, moreover, precludes courts from questioning the *validity* of certain actions taken by sovereign states. But this Court has already declared in no uncertain terms that the action at issue here—Argentina's payment on Exchange Bonds without a ratable payment on the FAA bonds—*is unlawful* under the FAA and the Injunctions. The Injunctions, moreover, do not declare any Argentine legislation invalid. They simply impose the agreed-upon *consequences* of those actions.

Again, that determination was perfectly justified in light of Argentina's consent to jurisdiction. A "federal court sitting as a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere." *Bano v. Union Carbide*, 361 F.3d 696, 716 (2d Cir. 2004) (quoted in *NML II*, 727 F.3d at 243); see also *Chafin v. Chafin*, 133 S. Ct. 1017, 1025 (2013) (where in personam jurisdiction is proper, courts may "command [a defendant] to take action even outside the United States"). Thus, the Injunctions properly apply to *all* payments on the U.S.-dollar-denominated Exchange Bonds—even if "the payment process for the[] securities takes place *entirely* outside the United States." *NML II*, 727 F.3d at 244 (emphasis added). The *situs* of the bonds is simply beside the point.

Citibank nevertheless protests that it cannot be enjoined from processing the Republic's payments on the Exchange Bonds because Argentine law—which it

44

says is identical to U.S. banking law—*requires* it to do so.  Citi Br. 22-24.
According to Citibank, "[a] bank that obeys banking law is not acting 'in concert'
with the Republic."  Citi Br. 26.  But excusing Citibank from respecting the
Injunctions simply because Argentina seeks to impose purportedly conflicting legal
obligations would confer on Argentina—the enjoined party—the power to
circumvent the Injunctions at will.  Moreover, it is irrelevant whether, in the
*absence* of the FAA, and in the *absence* of the Injunction, Citibank could
permissibly process Argentina's payments on the Exchange Bonds.  There *are*
Injunctions here—Injunctions that the district court issued because it determined
that the Republic had violated the Equal Treatment Provision of its own contract.
The failure to comply with those Injunctions is, *by definition*, unlawful.

Citibank also alleges that complying with the Injunctions would expose it to
breach-of-contract claims from its customers.  Citi Br. 9-10.  But Citibank neglects
to mention that its contracts expressly *relieve it* from liability taken under
compulsion of a court order.  See Plaintiffs' Opp. to Citibank Renewed Mot., at 21,
No. 09-8757 (S.D.N.Y. June 26, 2014) (Dkt. No. 396) (citing contracts).[15]
Citibank's argument is essentially that its business as usual—*i.e.*, processing

---

[15] These contracts were discussed at length before the district court and filed
under seal.  See No. 09-8757 (S.D.N.Y July 2, 2014) (Dkt. No. 400) (sealed
document).  Because certain of these documents are subject to pre-existing
protective orders, they are not quoted here.

payments received from Argentina—should trump the Injunctions. But this ground was covered at length in the prior appeal in *NML II*, where we showed that Rule 65(d) forbids entities from assisting in the violation of an injunction, even when they perform otherwise routine tasks. See Br. of Plaintiffs-Appellees Aurelius, No. 12-105, at 15-20 (2d Cir. Jan. 25, 2013) (Dkt. No. 820) (citing *Goya Foods, Inc. v. Wallack Management Co.*, 290 F.3d 63, 75-76 (1st Cir. 2002); *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996); *Waffenschmidt v. MacKay*, 763 F.2d 711, 715, 716 (5th Cir. 1985)). This court agreed. See *NML II*, 727 F.3d at 242-243.

Finally, Citibank says that, if it does not do Argentina's bidding, it will be subject to sanctions by the Republic—including potential loss of its banking license. Citi Br. 3. But as this Court has already explained, "[t]his type of harm—harm threatened to third parties by a party subject to an injunction who avows not to obey it—does not make an otherwise lawful injunction 'inequitable.'" *NML II*, 727 F.3d at 242. "Argentina's threats to punish third parties"—even to punish third parties criminally—therefore cannot "dictate the availability or terms of relief under Rule 65." *Ibid.* If Citibank loses its banking license or is otherwise a victim of Argentina's lawless refusal to keep its voluntary promises and abide by the fully litigated Injunctions, then so be it; there is no inherent right to profit from doing business with a rogue state in violation of U.S. law. Citibank should be seeking

46

relief against Argentina's lawlessness, not relief against plaintiffs who seek to enforce valid and fully litigated Injunctions.

Citibank's hands are not tied. When Argentina declared its intent to violate the Injunctions, Citibank had several options. It could have moved in the district court for an order enjoining Argentina from taking any action against Citibank that would violate the Injunction. It didn't do that. It could have stopped doing business with Argentina. It didn't do that either.

Instead, Citibank opted to join forces with Argentina—the very malefactor that it *acknowledges* has repeatedly and willfully defied the Injunctions. In other words, Citibank had a choice. It could have been on the same side of the "*v.*" as Appellees, and sought to hold *Argentina* to its commitments and to the district court's Injunctions. Instead, it cast its lot with the Republic, and now asks this Court to take rights away from *the Appellees*. That was a choice—and Citibank should not be permitted to avoid the consequences of its actions.

## C.    Appellants Are Not Entitled To Relief Because Argentina Has Repeatedly Violated, And Citibank Has Declared That It *Will* Violate, U.S. Law

It is doubly inappropriate to grant Citibank premature relief here because Citibank (and the Republic) have done nothing to merit this Court's accommodation. To the contrary, just days after filing its motion for expedited briefing in this Court, Citibank sent the Republic a letter assuring the Republic that

47

Citibank will "comply, at all times, with its obligations arising from contracts with its customers in Argentina, including those obligations that arise from our custodial agreements with our clients related to the next interest payment due on September 30, 2014 on the U.S.-dollar-denominated Argentine Law Exchange Bonds." JA2213. And Citibank made clear in that letter that it will facilitate the prohibited transfers "*[n]otwithstanding*" this appeal. *Ibid.* (emphasis added). In other words, Citibank has now represented that it fully intends to violate the Injunctions—*irrespective of what this Court decides*.

The Republic, of course, has made no secret of its contempt for the rule of law. At oral argument in this Court, the Republic's counsel declared that "it would not voluntarily obey the district court's injunctions, *even if* those injunctions were upheld by this court." *NML II*, 727 F.3d at 238 (emphasis added) (internal quotation marks omitted). Just hours after the Supreme Court's denial of certiorari—and despite having explicitly promised the Supreme Court that, "[t]o be clear, absent relief Argentina will comply with the [Injunctions]," Reply Brief of Petitioner at 12-13, *Republic of Argentina v. NML Capital Ltd.*, No. 13-990 (U.S. May 27, 2014)—the Republic hatched a scheme to make payments on the Exchange Bonds under Argentine law (without making a ratable payment on the FAA bonds). On June 20, the district court held that the Republic's plan was in clear violation of the court's anti-evasion order. Undeterred, on June 26, 2014,

48

Argentina went ahead and transferred $832 million to banks that process Exchange Bond payments.  Again, the district court ruled that the Argentina's payment "was illegal and a violation of the [Injunctions]."  Order, at 2, No. 08-6978 (S.D.N.Y. Aug. 6, 2014) (Dkt. No. 633).

And, just last week, the Republic announced that it would enact legislation to remove Bank of New York Mellon as the trustee of certain Exchange Bonds, and instead pay those bonds through a single account in Argentina—a blatant attempt to render the Injunctions a nullity.  Once again, the district court rebuffed the Republic, declaring in an emergency hearing on August 21 that the proposed legislation violates the Injunctions.[16]  These and other actions give the lie to Argentina's statement—risible even before its most recent actions—that it "reaffirms its commitment to resolving *all* of its outstanding defaulted indebtedness on a fair, equitable, and sustainable basis."  Arg. Br. 23 (emphasis added).[17]  What Argentina means by "fair" and "equitable" is *its* notion of what is

---

[16]  Argentina's proposed legislation amply demonstrates how the Injunctions would be eviscerated if Exchange Bonds were exempted from the Injunctions simply because their payments were made within Argentina or are governed by Argentine law.  The more latitude Argentina is given to make payments on any Exchange Bonds, the easier it will be for Argentina to evade the Injunctions entirely.

[17]  Immediately after certiorari was denied on June 16, and almost every day since, Argentina claimed that the so-called Rights Upon Future Offers ("RUFO") clause prevented it from resolving these cases, because the terms of any deal it

49

"fair" and "equitable."  Argentina's notion—demonstrated *ad nauseam* by its words and deeds, in court filings, global newspaper advertisements, and political speeches alike, and in transfers of funds in blatant violation of the Injunctions—is that Appellants will be treated "fairly" and "equitably" if *and only if* they "settle" this case by agreeing to the terms they rejected in 2005, in 2010, and in their filing in this Court on April 19, 2013 (see Response of Appellees to the Republic of Argentina's March 29 Proposal, No. 12-105 (2d Cir. April 19, 2013) (Dkt. No. 952)).  That ludicrous definition of what is "fair" and "equitable" should be rejected—*again*—in the most emphatic terms.  "Equality among creditors who have lawfully bargained for different treatment is not equity but its opposite." *Chem. Bank N.Y. Trust Co. v. Kheel*, 369 F.2d 845, 848 (2d Cir. 1966) (Friendly, J., concurring).

Citibank acknowledges that the Republic has repeatedly "defied" the Injunctions and "will do so again."  Citi Br. 2.  Yet now Citibank, too, has declared

---

reached with Appellees would have to be offered to all Exchange Bondholders. That concern was entirely manufactured—there were numerous reasons why the RUFO clause had no application—but Argentina continued to insist that its hands were tied.  Earlier this week, an aide to President Kirchner at last acknowledged that, under her administration, "[t]here is no intention to pay, even if all the bondholders were to waive the RUFO clause, or even in December, when it is due to expire."  See *Even Without the RUFO Clause, Cristina Says She Will Not Pay Griesa's Ruling*, lanacion.com, http://www.lanacion.com.ar/1721303-aun-sin-la-rufo-cristina-dice-que-no-pagara-el-fallo-de-griesa.  The cited article is in Spanish; Appellants would be happy to provide a certified translation at the Court's request.

its intent to violate the Injunctions.  And that is only the most recent example of Citibank's longstanding allegiance to the Republic.  Citibank acted as a deal manager for the 2010 Exchange Offer (JA3045); holds deposits in Argentina (according to recent reports) of approximately $2 billion; and has recently sought to represent the Republic in a new debt issuance.  Saabira Chaudhury, *Citigroup Could Lose up to $80 Million From Argentina Default*, Wall St. J., Aug. 1, 2014, http://online.wsj.com/articles/citigroup-cuts-exposure-to-russia-by-5-3-1406899327.  Recent reports also posit that Citibank stands to lose up to $80 million from Argentina's default on the Exchange Bonds.  *Ibid.*  In keeping with Argentina's wishes, Citibank has voiced Argentina's sovereign-immunity arguments in various judicial proceedings and has resisted discovery relating to transactions between the Republic and its Argentine branch.  *E.g.*, JA3048-55.

Thus, despite its remonstration that it is simply "caught in the crossfire" between the Republic and Appellees, Citibank is no innocent bystander.  Reply Br. in Support of Emergency Mot. to Expedite, at 6, No. 14-2689 (2d Cir. Aug. 13, 2014) (Dkt. No. 47).  Citibank nevertheless complains that the Injunctions—which merely prevent it from aiding and abetting Argentina's lawless actions—subject it to "oppressive and inequitable burdens."  Citi Br. 18.  It therefore seeks this Court's blessing to violate the Injunctions.

51

Neither Citibank, nor Argentina, is entitled to seek such relief. This Court has made clear that the law "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) (quotation marks omitted). Argentina, of course, bears all the badges of bad faith that this Court has recognized. It has "flat-out refus[ed] to comply with the District Court's lawful orders." *Id.* at 128. It has "time and again deployed [its] lawyers to raise legal roadblocks to the enforcement of the judgment against [it]." *Id.* at 127. And it has "persistently endeavored to evade the lawful jurisdiction of the District Court and undermine its careful and determined work." *Ibid.*

And Citibank's hands are no cleaner. Rule 65(d) prohibits Citibank from assisting Argentina in violating the Injunctions. And Citibank has declared that it intends to do just that. This Court should reject its request for advance permission to defy the district court's Injunctions.

## CONCLUSION

For the foregoing reasons, this Court lacks jurisdiction to review the July 28 Order. In the alternative, this Court should affirm the July 28 order for the other reasons stated above and in NML's brief.

52

Dated:  August 29, 2014                    Respectfully submitted,

                                           By: /s/ Roy T. Englert, Jr.

Edward A. Friedman                         Roy T. Englert, Jr.
Daniel B. Rapport                          Mark T. Stancil
FRIEDMAN KAPLAN SEILER                     ROBBINS, RUSSELL, ENGLERT, ORSECK,
   & ADELMAN LLP                            UNTEREINER & SAUBER LLP
7 Times Square                             1801 K Street, N.W.
New York, NY 10036                         Washington, DC 20006
(212) 833-1100                             (202) 775-4500

*Counsel for Plaintiffs-Appellees Aurelius Entities and Blue Angel Capital I LLC*

                                           Michael C. Spencer
                                           MILBERG LLP
                                           One Pennsylvania Plaza
                                           New York, NY 10119
                                           (212) 594-5300

*Counsel for Plaintiffs-Appellees Pablo Alberto Varela et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,827 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word.

Dated:  August 29, 2014              /s/ Roy T. Englert, Jr.              
                                     Roy T. Englert, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2014, I caused a true and correct copy of the foregoing to be filed with the Court by CM/ECF, and caused additional copies to be served upon counsel for all parties by CM/ECF.

/s/ Roy T. Englert, Jr.
Roy T. Englert, Jr.
