# 14-2689(L)

14-2691 (CON), 14-2693 (CON), 14-2696 (CON), 14-2697 (CON), 14-2698 (CON),
14-2699 (CON), 14-2700 (CON), 14-2701 (CON), 14-2702 (CON), 14-2703 (CON),
14-2704 (CON), 14-2705 (CON), 14-2709 (CON), 14-2711 (CON), 14-2713 (CON),
14-2714 (CON), 14-2715 (CON), 14-2718 (CON), 14-2722 (CON), 14-2723 (CON),
14-2724 (CON), 14-2728, 14-2732 (CON), 14-2736 (CON)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

AURELIUS CAPITAL MASTER, LTD., AURELIUS OPPORTUNITIES FUND II, LLC,
ACP MASTER, LTD., NML CAPITAL, LTD., OLIFANT FUND, LTD.,
BLUE ANGEL CAPITAL I, LLC, PABLO ALBERTO VARELA, LILA INES BURGUENO,
MIRTA SUSANA DIEGUEZ, MARIA EVANGELINA CARBALLO,
LEANDRO DANIEL POMILIO, SUSANA AQUERRETA, MARIA ELENA CORRAL,
TERESA MUNOZ DE CORRAL, NORMA ELSA LOVORATO, CARMEN IRMA LAVORATO,
CESAR RUBEN VAZQUEZ, NORMA HAYDEE GINES, MARTZ AZUCENA VAZQUEZ,

*Plaintiffs-Appellees*,

v.

REPUBLIC OF ARGENTINA,

*Defendant-Appellant*,

CITIBANK, N.A.,

*Movant/Interested Party-Appellant.*

On Appeal from the United States District Court
for the Southern District of New York

## RESPONSE BRIEF OF PLAINTIFF-APPELLEES
## NML CAPITAL, LTD. AND OLIFANT FUND, LTD.

Leonard F. Lesser
SIMON LESSER PC
355 Lexington Avenue
New York NY 10017
(212) 599-5455
*Counsel for Appellee Olifant Fund, Ltd.*

Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500
*Counsel for Appellee NML Capital, Ltd.*

*(Additional Appearances on Inside Cover)*

Robert A. Cohen
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

Matthew D. McGill
Jason J. Mendro
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

*Counsel for Appellee NML Capital, Ltd.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel state that:

NML Capital, Ltd. is not publicly traded and has no corporate parent, and no publicly held corporation owns 10% or more of its stock.

Olifant Fund, Ltd., is not publicly traded; its parent corporation is ABIL, Ltd., and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

COUNTER-STATEMENT OF JURISDICTION .....................................5

COUNTER-STATEMENT OF THE ISSUES ........................................6

COUNTER-STATEMENT OF THE CASE .........................................7

    A.    The FAA Bonds And Argentina's Default............................7

    B.    NML Obtains The Injunction Based On Argentina's Breach Of The Equal-Treatment Provision .......................................9

    C.    Argentina Announces Its Intention To Defy The Injunction .............11

    D.    Citibank's Request For Clarification Of The Injunction ...................13

    E.    Argentina Announces Its Latest Plan To Evade The Injunction.................................................................17

SUMMARY OF ARGUMENT ......................................................19

STANDARD OF REVIEW .........................................................21

ARGUMENT ........................................................................22

    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO EXEMPT ARGENTINE-LAW EXCHANGE BONDS FROM THE INJUNCTION .........................................................22

    A.    The Existing Injunction Clearly Applies To The Argentine-Law Exchange Bonds That Argentina And Citibank Seek To Exclude ........................................................23

        1.    The Injunction's Text Unambiguously Applies To All Bonds Issued By Argentina In The 2005 And 2010 Exchanges ..............................................................23

ii

# TABLE OF CONTENTS
## (continued)

**Page**

2.     Argentina's And Citibank's Claims That The Bonds
At Issue Are Not Exchange Bonds Have No Basis In
The Injunction's Text.................................................................26

B.     There Is No Basis For Modifying The Injunction To Exclude
The Argentine-Law Exchange Bonds At Issue From The
Injunction...............................................................................29

1.     Argentina And Citibank Did Not And Could Not
Properly Seek Modification Of The Existing
Injunction .............................................................................30

a.     Argentina Did Not Request Modification, And
Its Unclean Hands And Defiance Of Judicial
Authority Categorically Foreclose Granting It
Equitable Relief ............................................................31

b.     Citibank Did Not And, As A Non-Party, Could
Not Properly Seek Modification Under Rule
60(b)...........................................................................34

2.     Neither Argentina Nor Citibank Identifies Any Valid
Basis For Modifying The Injunction To Exclude The
Argentine-Law Bonds .............................................................36

a.     The Injunction Validly Applies To Third
Parties That Facilitate Forbidden Payments On
Exchange Bonds ..........................................................37

b.     None Of The Attributes Of The Argentine-Law
Bonds Supports Excluding Them From The
Injunction ...................................................................40

# TABLE OF CONTENTS
## (continued)

**Page**

c.    The Injunction Validly Applies To The Argentine-Law Bonds Regardless Of Where The Funds Used To Make Payments Are Located ...................................................................41

d.    The Separate-Entity Rule Does Not Bar Application Of The Injunction To The Argentine-Law Bonds ......................................43

e.    The Act-Of-State Doctrine Does Not Bar Applying The Injunction To The Argentine-Law Exchange Bonds ....................................47

f.    Argentina's Abusive Enforcement Actions Cannot Excuse Payments On Exchange Bonds In Violation Of The Injunction ........................51

g.    The Purported Difficulty Of Distinguishing Bonds Issued To Repsol From The Argentine-Law Exchange Bonds At Issue Does Not Justify Excluding Exchange Bonds From The Injunction ...............................................................54

3.    Modifying The Injunction To Permit Payment On Argentine-Law Bonds Would Subvert The Injunction And Provide Argentina With A Roadmap For Future Evasion ....................................................................58

CONCLUSION ............................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
154 F.3d 1345 (Fed. Cir. 1998)............................................................44

*Advance Pharm., Inc. v. United States*,
391 F.3d 377 (2d Cir. 2004)................................................................31

*Af-Cap, Inc. v. Republic of Congo*,
462 F.3d 417 (5th Cir. 2006)...............................................................49

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
425 U.S. 682 (1976)............................................................................50

*Allied Bank International v. Banco Credito Agricola de Cartago*,
757 F.2d 516 (2d Cir. 1985)........................................................... 49, 50

*Allied Maritime, Inc.*, *v. Descatrade SA*,
620 F.3d 70 (2d Cir. 2010).................................................................43

*Aurelius Capital Partners, LP v. Republic of Argentina*,
2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) .........................................42

*Ayyash v. Koleilat*,
38 Misc. 3d 916 (Sup. Ct. N.Y. Cnty. 2012) .......................................45

*Baker's Aid v. Hussmann Foodservice Co.*,
830 F.2d 13 (2d Cir. 1987)..................................................................44

*Baum v. Blue Moon Ventures, LLC*,
513 F.3d 181 (5th Cir. 2008)...............................................................30

*Bridgeport Coal. for Fair Representation v. City of Bridgeport*,
26 F.3d 280 (2d Cir. 1994)..................................................................30

*CE Int'l Res. Holdings, LLC v. S.A. Minerals P'ship*,
2013 WL 2661037 (S.D.N.Y. Jun. 12, 2013) ................................. 43, 45

*Cent. Nat. Bank v. Conn. Mut. Life Ins. Co.*,
104 U.S. 54 (1881).............................................................................57

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011)..................................................................... 24, 42

*Cronan v. Schilling*,
   100 N.Y.S.2d 474 (Sup. Ct. N.Y. Cnty. 1950) ........................................... 44, 45

*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
   341 F.2d 50 (2d Cir. 1965)...............................................................................44

*Eli Lilly & Co. v. Gottstein*,
   617 F.3d 186 (2d Cir. 2010) ............................................................................39

*EM Ltd.* v. *Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007)...............................................................................7

*EM Ltd. v. Republic of Argentina*,
   865 F. Supp. 2d 415 (S.D.N.Y. 2012)...............................................................41

*Estate of Shefner ex rel. Shefner v. Beraudiere*,
   __ F. App'x __, 2014 WL 4067184 (2d Cir. Aug. 19, 2014) .............................35

*Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*,
   921 F. Supp. 1113 (S.D.N.Y. 1996)..................................................................44

*Garcia v. Yonkers Sch. Dist.*,
   561 F.3d 97 (2d Cir. 2009)...............................................................................21

*Goya Foods, Inc. v. Wallack Management Co.*,
   290 F.3d 63 (1st Cir. 2002) ..............................................................................38

*Gucci America, Inc. v. Weixing Li*,
   2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011).....................................................43

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013) .....................................................................................46

*In re M.B. Int'l W.W.L.*,
   2012 WL 3195761 (S.D.N.Y. Aug. 6, 2012)......................................................44

vi

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*John Wiley & Sons, Inc. v. Kirtsaeng*,
   2009 WL 3003242 (S.D.N.Y. Sept. 15, 2009)....................................................45

*Johnson v. Holder*,
   564 F.3d 95 (2d Cir. 2009)........................................................... 37, 40

*Lichtenberg v. Besicorp Grp. Inc.*,
   204 F.3d 397 (2d Cir. 2000)...........................................................6

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004).........................................................52

*Motorola Credit Corp. v. Uzan*,
   561 F.3d 123 (2d Cir. 2009)......................................................... 32, 36

*N. Mariana Islands v. Millard*,
   287 F.R.D. 204 (S.D.N.Y. 2012) .................................................53

*Nat'l Acceptance Co. of Am. v. Frigidmeats, Inc.*,
   627 F.2d 764 (7th Cir. 1980).....................................................35

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)..................................... 7, 8, 9, 29, 41, 53

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013)................................ 2, 3, 6, 10, 11, 32, 35,
                               37, 38, 40, 41, 42, 46, 53, 58

*O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*,
   830 F.2d 449 (2d Cir. 1987)......................................................52

*Ofosu v. McElroy*,
   98 F.3d 694 (2d Cir. 1996)........................................................32

*Peters v. Bain*,
   133 U.S. 670 (1890) ...............................................................57

*Petrello v. White*,
   533 F.3d 110 (2d Cir. 2008).....................................................24

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945) ................................................................31

*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945) ..................................................................38

*Reliance Ins. Co. v. Mast Constr. Co.*,
   84 F.3d 372 (10th Cir. 1996) ................................................39

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 201 (2013) .........................................................7, 9

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2250 (2014) ..........................................................42

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2819 (2014) ..................................................... 2, 11

*Republic of Argentina v. Weltover*,
   504 U.S. 607 (1992) ..............................................................50

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004) ..............................................................49

*Republic of Philippines v. Marcos*,
   806 F.2d 344 (2d Cir. 1986) ............................................ 49, 51

*Republic of Philippines v. Westinghouse Elec. Corp.*,
   43 F.3d 65 (3d Cir. 1994) .....................................................48

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ..............................................................49

*Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*,
   2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) .......................45

*Sherman v. Town of Chester*,
   752 F.3d 554 (2d Cir. 2014) .................................................28

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   732 F.2d 253 (2d Cir. 1984) ........................... 30, 36, 41, 51

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.*,
   740 F.3d 108 (2d Cir. 2014)...............................................................53

*United States v. Ben Zvi*,
   242 F.3d 89 (2d Cir. 2001).................................................................29

*United States v. First Nat'l City Bank*,
   379 U.S. 378 (1965)................................................................... 45, 46

*United States v. Melendez-Carrion*,
   820 F.2d 56 (2d Cir. 1987).................................................................36

*United States v. Modica*,
   663 F.2d 1173 (2d Cir. 1981).............................................................55

*United States v. Spallone*,
   399 F.3d 415 (2d Cir. 2005)....................................... 21, 23, 26

*United States v. Wilkerson*,
   361 F.3d 717 (2d Cir. 2004).............................................................36

*W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.*,
   493 U.S. 400 (1990)................................................................... 47, 48

*Waffenschmidt v. MacKay*,
   763 F.2d 711 (5th Cir. 1985).............................................................38

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir. 2005).............................................................21

## Statutes

12 U.S.C. § 633 .........................................................................45

28 U.S.C. § 1291 ................................................................. 2, 5, 6

28 U.S.C. § 1292 ................................................................. 2, 5, 6

28 U.S.C. § 1609 ............................................................... 41, 42

N.Y. Banking Law § 138 .........................................................45

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

N.Y. Uniform Comm. Code § 4-A-105 ...................................................45

N.Y. Uniform Comm. Code § 5-116 ......................................................45

N.Y. Uniform Comm. Code § 8-112 ......................................................45

**Rules**

Fed. R. App. P. 4 ........................................................................6

Fed. R. App. P. 28 ......................................................................5

Fed. R. Civ. P. 60 ........................................................ 31, 32, 35, 40

Fed. R. Civ. P. 65 ............................................................... 24, 37

Fed. R. Civ. P. 69 ......................................................................44

**Other Authorities**

Saabira Chaudhuri, *Citigroup Could Lose up to $80 Million From
   Argentina Default*, Wall St. J. Online (Aug. 1, 2014),
   http://tinyurl.com/losr5u3 ....................................................13

Charlie Devereux et al., *Argentina's Bonds Decline on Plan to Offer
   Local-Law Swap*, Bloomberg.com (Aug. 20, 2014),
   http://tinyurl.com/pbdux5m ....................................................17

Alison Frankel, *Argentina's Comments put US Lawyers In Awkward
   Spot*, Reuters (June 19, 2014), http://tinyurl.com/k8m9pbb.................33

Alison Frankel, *Did Argentina Lie to the Supreme Court?*,
   Reuters (June 2, 2014), http://tinyurl.com/ktwzoxf...........................33

*Kicillof Warns "No Change of Payment Jurisdiction,"*
   Buenos Aires Herald (Aug. 20, 2014), http://tinyurl.com/o2ta68r.....................18

Linette Lopez, *Argentina Put a Scathing Full-Page Ad in Three Major
   Newspapers This Weekend*, Business Insider (June 23, 2014),
   http://tinyurl.com/qyztvhg.....................................................33

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Ken Parks & Taos Turner, *Argentina Moves to Pay Exchange
    Bondholders in Argentina*, Wall St. J. Online (Aug. 20, 2014),
    http://tinyurl.com/jw3bs94 .....................................................................17

Katia Porzecanski & Camila Russo, *Argentina Deposits $1 Billion for
    June 30 Bond Payments*, Bloomberg.com (June 26, 2014),
    http://tinyurl.com/kr5qxfd .....................................................................12

Reply Br., *Republic of Argentina v. NML Capital, Ltd.*,
    No. 13-990 (U.S. May 27, 2014) ............................................. 3, 11, 33

*Restatement (Third) of Foreign Relations Law* (1987)......................... 50, 51, 52, 54

Austin W. Scott, *The Right to Follow Money Wrongfully Mingled with
    Other Money*, 27 Harv. L. Rev. 125 (1913).......................................57

C. Wright et al., *Federal Practice & Procedure* (3d ed. updated 2014) .................35

# PRELIMINARY STATEMENT

The core question presented in these consolidated appeals (if the Court has jurisdiction to adjudicate them at all, which it does not) is whether the district court abused its broad discretion by declining to bless in advance blatant violations of an existing injunction that this Court has already affirmed (the "Injunction").  That question answers itself.  Indeed, controlling precedent compelled the district court in its order of July 28, 2014 (the "July 28 Order") to reject the central argument made by non-party Citibank, N.A.  Now joined by Argentina, Citibank argues that, despite the Injunction's clear command that Argentina make ratable payments to NML Capital, Ltd., Olifant Fund, Ltd., and others (collectively, "Plaintiffs") if and when it pays on Exchange Bonds, Argentina nevertheless *can* make (and Citibank can process) payments on a massive category of Exchange Bonds *whether or not* Argentina fulfills its obligations to pay Plaintiffs as well.  The district court's ruling rejecting that claim was correct—and certainly not an abuse of discretion— and neither Argentina nor Citibank presents any valid ground to overturn it.

In fact, as demonstrated in the response brief of Aurelius Capital Master, Ltd. ("Aurelius") et al., this Court cannot even entertain Argentina's and Citibank's bids to reverse the July 28 Order because the Court lacks appellate jurisdiction to review that ruling.  That interlocutory order, which merely confirmed the Injunction's application to hypothetical future conduct that its text

1

expressly covers, is neither a final judgment or order reviewable under 28 U.S.C. § 1291, nor an order appealable under 28 U.S.C. § 1292(a). If Citibank or others wish to challenge the Injunction's application to particular, concrete conduct—on grounds not foreclosed by this Court's prior decisions—they must pursue the appropriate avenue previously outlined by this Court: disobeying the Injunction and raising any available argument in opposing a finding of contempt. *See NML Capital, Ltd. v. Republic of Argentina (NML II)*, 727 F.3d 230, 243-44 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014).

Even if the Court could hear Argentina's or Citibank's appeals, however, it would make no difference because neither appellant tenders a colorable argument for reversing the July 28 Order—especially under the deferential abuse-of-discretion standard. The existing Injunction as it stands unequivocally applies to the conduct that Argentina and Citibank seek prospective permission to undertake: Both claim that payments on certain U.S.-dollar-denominated Exchange Bonds governed by Argentine law are exempt from the Injunction. But the clear and controlling text of the Injunction—which this Court has affirmed, and which is no longer subject to challenge—encompasses those bonds no less than others.

The district court thus could have deemed the Argentine-law Exchange Bonds at issue exempt from the Injunction only by *modifying* the Injunction to exclude such bonds. But neither Argentina nor Citibank did or even could

2

properly request such a modification below.  Argentina never asked the district court to amend the Injunction.  But even if it had done so, the Republic's conduct would have made it ineligible.  Modification of an injunction is a form of equitable relief, but the doors of a court of equity are closed to litigants who come to the Court with unclean hands.  Argentina's hands are stained with bad-faith efforts to evade its obligations and open defiance of this Court's and the district court's orders.  Indeed, in the prior appeal, Argentina pledged to disobey the Injunction, even if affirmed, *NML II*, 727 F.3d at 238 n.4—as it now has been.  And despite assuring the U.S. Supreme Court that Argentina had turned over a new leaf, and that "absent relief Argentina will comply with the orders under review," Reply Br. 13, *Republic of Argentina v. NML Capital, Ltd.*, No. 13-990 (U.S. May 27, 2014), *since* that Court denied certiorari the Republic has done exactly the opposite— attempting to make a prohibited payment and repeatedly (and publicly) pursuing plans to evade the Injunction, as recently as last week, in flagrant violation of the district court's explicit rulings that Argentina's schemes are "illegal."  Aug. 21, 2014 Hr'g Tr. 21, *available at* http://tinyurl.com/n49u76r.

Non-party Citibank also did not properly seek modification.  Its motion that gave rise to the July 28 Order instead sought a particular "constru[ction]" of the Injunction.  And it did not even invoke Federal Rule of Civil Procedure 60(b), or attempt to demonstrate that Rule 60(b)'s standard for modification based on

allegedly changed circumstances was satisfied.  It is no wonder why:  Rule 60(b) permits only a "party or its legal representative" to seek modification.  Citibank is neither.  It thus *could not* invoke Rule 60(b) to seek revision of the Injunction, but rather (as this Court has explained) must wait to raise any available challenges to application of the Injunction in contempt proceedings if and when Citibank participates in a violation of the Injunction.

Even if either appellant had properly sought modification, no valid basis for modification exists.  Only a significant change in law or facts could justify altering the existing Injunction.  But nearly all of the grounds Argentina and Citibank raise rest on law and facts that have not changed since the Injunction was entered and affirmed.  The only purportedly new developments—Argentina's self-serving edicts that its own law requires Citibank to make payments on the Argentine-law Exchange Bonds, and its scorched-earth scheme to shield Exchange Bonds from the Injunction by commingling them with other debts—hardly show that Argentina is entitled to equitable relief.

None of the grounds Argentina and Citibank raise, moreover, could justify the sweeping modification they propose on appeal, which would gut the Injunction and foment immediate circumvention of it by the Republic—which is all too eager to evade both the Injunction and its own contractual commitments.  Exempting some or all of the Argentine-law Exchange Bonds from the Injunction would likely

encourage Argentina to attempt to rearrange its debts and payment processes to circumvent the Injunction, despite the Injunction's explicit prohibition of such evasion and Argentina's contractual commitments to Plaintiffs.

This Court should not countenance the Republic's disregard for the authority and dignity of the federal courts, much less reward Argentina's disobedience and already-adjudicated breach of contract by diluting the Injunction to encourage still further evasion. The Court should dismiss both appeals outright, or alternatively affirm the district court's July 28 Order.

## COUNTER-STATEMENT OF JURISDICTION

As explained in detail by Aurelius in its brief—which NML and Olifant adopt and incorporate by reference here, *see* Fed. R. App. P. 28(i)—this Court lacks jurisdiction over the appeals brought by both Argentina and Citibank. The district court's July 28 Order from which both purport to appeal is not a final order appealable under 28 U.S.C. § 1291. *See* Aurelius Br. 18-20. Nor is the July 28 Order appealable under 28 U.S.C. § 1292(a)(1) as an order "modifying" or "refusing to … modify" an injunction. *See* Aurelius Br. 20-31. Indeed, the district court was not presented with any proper request to modify the Injunction under Federal Rule 60(b). Instead, the July 28 Order court merely *interpreted* the Injunction's existing scope, confirming that the Injunction encompasses the U.S.-

dollar-denominated Argentine-law Exchange Bonds for which Citibank sought clarification.

At bottom, Argentina's and Citibank's appeals thus challenge the Injunction itself or its application to particular conduct. The former is far too late, and the latter is fatally premature. A challenge to the Injunction itself is clearly foreclosed: Argentina has already unsuccessfully appealed the Injunction. *See NML II*, 727 F.3d at 248. Argentina may not take yet another appeal of the Injunction now, long after the 30-day deadline for appealing the Injunction itself (Fed. R. App. P. 4(a)(1)(A)) expired, "by seeking relitigation of the original issues in the guise of a motion to dissolve or modify the injunction and appealing from the denial of that motion." *Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 401 (2d Cir. 2000). And to the extent that Citibank or others wish to challenge the Injunction's application to particular transactions, the proper avenue to do so, as this Court made clear, is in a future contempt proceeding, if and when Citibank violates the Injunction by making payments on such bonds. *See NML II*, 727 F.3d at 243-44.

## COUNTER-STATEMENT OF THE ISSUES

1.    Whether this Court has jurisdiction under 28 U.S.C. § 1291 or § 1292(a)(1) over Argentina's or Citibank's appeals of the July 28 Order.

2.    Whether the district court abused its discretion by declining to exempt certain Argentine-law Exchange Bonds from the Injunction's scope, when the

Injunction expressly applies to such bonds, when neither Argentina nor Citibank properly did or could seek modification of the Injunction, and when neither has identified any significant change in law or facts to justify such modification.

## COUNTER-STATEMENT OF THE CASE

### A.    The FAA Bonds And Argentina's Default

Argentina has a long "history of defaulting on, or requiring restructuring of, its sovereign obligations." *EM Ltd.* v. *Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007).  This case concerns bonds that Argentina issued starting in 1994, pursuant to a Fiscal Agency Agreement (the "FAA"), which it now refuses to honor (the "FAA Bonds").  Seeking to make those bonds more marketable and to reassure investors wary of the Republic's track record, Argentina made several promises in the Agreement to protect investors in case Argentina defaulted again. Among other things, Argentina agreed to "rank" its "payment obligations" under the FAA Bonds "at least equally" with its payment obligations on its other "External Indebtedness," J.A.377—a commitment this Court has called the "Equal Treatment Provision," *NML Capital, Ltd. v. Republic of Argentina (NML I)*, 699 F.3d 246, 251 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 201 (2013)—and pledged that disputes concerning the FAA Bonds would be adjudicated in New York courts under New York law.  J.A.404-05.

Those promises in the FAA Bonds took on great importance in 2001, when Argentina again defaulted on its debt, and declared a moratorium on payments on more than $80 billion of its debt—including the FAA Bonds. *NML I*, 699 F.3d at 251. Argentina has renewed that moratorium annually. *Id.* After refusing for several years even to negotiate with FAA Bondholders, in 2005 Argentina conducted an exchange offer, pressuring its creditors to swap their bonds for newly issued bonds (the "Exchange Bonds") for pennies on the dollar—which some investors agreed to do. *Id.* at 252. In 2010, Argentina conducted another exchange offer for creditors who still had not agreed to the Republic's lopsided terms. *Id.* at 252-53. The Exchange Bonds Argentina issued are variously governed by New York, U.K., Japanese, or Argentine law, and denominated in U.S. dollars, euros, yen, or Argentine pesos, *see*, *e.g.*, Citibank Br. 13, and are held by investors around the globe.

Argentina has repeatedly disclaimed any intent to make payments to those creditors who did not accept the swap. Indeed, it codified that refusal in Argentine law—including in a payment moratorium in its budget laws, and in a series of statutes forbidding the Argentine Executive from paying what it owes on the FAA Bonds. *See NML I*, 699 F.3d at 252-53. At the same time, since 2005, Argentina has timely honored its obligations under the Exchange Bonds, while refusing to

8

make payments on the FAA Bonds, in contravention of the Equal-Treatment Provision.

### B.    Plaintiffs Obtain The Injunction Based On Argentina's Breach Of The Equal-Treatment Provision

NML and Olifiant are beneficial owners of certain FAA Bonds on which Argentina defaulted and has continually refused to pay.  NML, Olifant, and other Plaintiffs who held FAA Bonds sued Argentina for its breach, seeking (as relevant here) specific performance of the Equal-Treatment Provision.  *See NML I*, 699 F.3d at 253-54.  The district court granted Plaintiffs partial summary judgment and held that Argentina was violating the Equal-Treatment Provision by "relegating [their] bonds to a non-paying class" and "persisting in its refusal to satisfy its payment obligations currently due under [Plaintiffs'] Bonds" while "making payments currently due under the Exchange Bonds."  J.A.1280.

To remedy that breach, and to prevent Argentina from evading its contractual obligations in the future, the district court entered injunctions on February 23, 2012, compelling Argentina to comply with the Equal-Treatment Provision.  J.A.1340-45.  Argentina appealed, and this Court affirmed the central provisions of those injunctions, but remanded for the district court to clarify two narrow questions about how the injunctions are "intended to function."  *NML I*, 699 F.3d at 250.  Argentina sought certiorari, which the Supreme Court denied. 134 S. Ct. 201.

On remand, the district court entered a series of orders (collectively, the "Injunction") on November 21, 2012, providing the requested clarification. J.A.1459.  Under the Injunction, whenever Argentina makes a payment on any Exchange Bond, it must also—either concurrently or in advance—make a ratable payment to Plaintiffs due on approximately $1.65 billion in FAA Bonds and interest.  J.A.1444, 1462, 1803.  The Injunction expressly defines "Exchange Bonds" as any "bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future."  J.A.1462.  It also specifically forbids Argentina from taking any steps to evade the Injunction or to diminish the district court's ability to supervise compliance.  J.A.1465.

Argentina again appealed, and in August 2013 this Court again affirmed. *NML II*, 727 F.3d at 238.  After recounting Argentina's pronouncements—both before this Court and in public—that it would not comply with the Injunction even if affirmed, the Court rejected all of Argentina's challenges to the clarified Injunction.  *Id.* at 238, 240-41, 244-48.  The Court also rejected an array of challenges to the Injunction raised by various third parties—including among others various financial institutions, such as Bank of New York Mellon ("BNYM"), involved in the process for making payments on Exchange Bonds— who claimed that the Injunction was improper as applied to them on equitable and

10

legal grounds. *Id.* at 241-44. As the Court explained, the purported harms feared by these third parties were of Argentina's own making, and "harm threatened to third parties by a party subject to an injunction who avows not to obey it … does not make an otherwise lawful injunction 'inequitable.'" *Id.* at 242. The Court thus was "unwilling to permit Argentina's threats to punish third parties to dictate the availability or terms of relief under Rule 65." *Id.*

This Court stayed its August 2013 ruling to enable Argentina again to seek Supreme Court review. *NML II*, 727 F.3d at 238. Argentina sought certiorari, but pledged that "absent relief Argentina will comply with the orders under review," Reply Br. 13, *NML Capital*, No. 13-990. The Supreme Court denied review on June 16, 2014. 134 S. Ct. 2819. This Court's stay of the Injunction dissolved automatically upon the Supreme Court's denial of certiorari, as this Court confirmed two days later. J.A.1788.

### C.    Argentina Announces Its Intention To Defy The Injunction

Both during and since the prior appeal, Argentina has brazenly proclaimed its intention to disobey the orders of the district court or of this Court, and indeed has openly defied them. Immediately after this Court affirmed the Injunctions in August 2013, Argentina announced a plan to evade the Injunctions by permitting Exchange Bondholders to replace their bonds with nearly identical instruments

11

payable within Argentina.  *See* J.A.1927.  The district court ruled unequivocally that such a plan would violate the Injunction.  J.A.1927-29.

Nevertheless, mere hours after the Supreme Court denied certiorari in June 2014—and despite Argentina's assurance to the Supreme Court that going forward it finally would obey the Injunction—Argentina's president declared publicly that the Republic would not "be subjected to such extortion."  Stancil Decl., Ex. B, at 5 (Aug. 12, 2014) (Dkt. #43-2).[1]  The very next day, Argentina's Economy Minister, Axel Kicillof, announced a nearly identical plan to evade the Injunction by swapping the Exchange Bonds to place them outside the court's reach.  *Id.*, Ex. C., at 1 ("[W]e are initiating steps to carry out a debt exchange to pay in Argentina under Argentine law.").  The district court once again promptly ruled that this plan violated the Injunction's anti-evasion provisions.  J.A.1931-33.

Undeterred, Argentina then proceeded openly to transgress the Injunction. On June 26, 2014, Argentina attempted to satisfy its June 30 payment obligations on the Exchange Bonds—by transferring $832 million to banks that process Exchange Bond payments—without making a ratable payment to Plaintiffs.  *See* Katia Porzecanski & Camila Russo, *Argentina Deposits $1 Billion for June 30 Bond Payments*, Bloomberg.com (June 26, 2014), http://tinyurl.com/kr5qxfd.  The district court promptly found this to violate the Injunction as well, and forbade the

---

[1]  "Dkt. #__" refers to docket entries in this Court in No. 14-2689.

Indenture Trustee on certain of the Exchange Bonds (BNYM) from forwarding the payment.  J.A.1836.

### D.    Citibank's Request For Clarification Of The Injunction

**1.**    Citibank has a longstanding banking relationship with Argentina. Citibank acted as a deal manager for the 2010 Exchange Offer; holds deposits in Argentina (according to recent reports) of approximately $2 billion; and has recently sought to represent the Republic in a new debt issuance.  J.A.3045; *see* Saabira Chaudhuri, *Citigroup Could Lose up to $80 Million From Argentina Default*, Wall St. J. Online (Aug. 1, 2014), http://tinyurl.com/losr5u3.  Citibank's Argentine branch—Citibank Argentina—maintains custody accounts for customers in Argentina, some of whom hold Exchange Bonds governed by Argentine law in their accounts.

As custodian for these Bondholders, Citibank has a financial interest in Argentina's ability to make the payments that Citibank processes to these customers.  Accordingly, and in keeping with Argentina's wishes, Citibank has previously voiced Argentina's sovereign-immunity arguments in various judicial proceedings and has resisted discovery relating to transactions between the Republic and its Argentine branch.  *See*, *e.g.*, J.A.3048-55.

**2.**    In May 2013, while the prior appeal to this Court was pending, Citibank filed a motion in the district court seeking "clarification" of the

Injunction, urging that court to hold that the Injunction does not apply to Exchange Bonds governed by Argentine law.  *See* J.A.1786; D.E.214-215.[2]  The district court denied the motion without prejudice because the appeal of the Injunction was still pending.  J.A.1786.

In June 2014, after the Supreme Court denied certiorari for the second time, Citibank renewed its May 2013 motion.  *See* D.E.266 (docketed July 1, 2014).  Citibank's renewed motion did not invoke Federal Rule of Civil Procedure 60(b), which governs modification of final judgments and orders.  Instead, it argued that the Injunction "should not be construed, as a matter of law, to enjoin payments by Citibank Argentina on Argentine Law Bonds to customers for whom it acts as custodian in Argentina."  *Id.* at 24.  Yet Citibank conceded that the "Argentine Law Bonds" as to which it sought clarification "are … Exchange Bonds."  *Id.* at 4.

At a hearing before the district court, Citibank asserted, inaccurately, that the Injunction applies only to Exchange Bonds for which BNYM is the trustee, and that the Argentine-law bonds for which Citibank is custodian had previously been treated "completely differently" from other Exchange Bonds.  J.A.1839-40.  Based partly on those inaccurate representations, the district court initially granted Citibank's motion.  It issued an order on June 27, 2014, "clarif[ying]" that the Injunction does not "prohibit payments by Citibank, N.A.'s Argentine branch on

---

[2]  "D.E.__" refers to docket entries in the district court in No. 1:10-cv-3970-TPG.

Peso- and U.S. Dollar-denominated" Argentine-law Exchange Bonds "to customers for whom [Citibank] acts as custodian in Argentina."   S.A.6 (capitalization omitted).

**3.**   Plaintiffs promptly sought partial reconsideration of the district court's June 27 ruling.   D.E.284-285.   As they explained, the Argentine-law Exchange Bonds denominated in U.S. dollars had not in fact been treated differently from other Exchange Bonds, and they were squarely covered by the Equal-Treatment Provision because they constitute "External Indebtedness" of Argentina as defined in the FAA.   D.E.285, at 7-12.[3]   Euroclear Bank—which also processes payments on the Argentine-law Exchange Bonds—confirmed that the dollar-denominated Argentine-law Exchange Bonds are also paid through Citibank's accounts in New York.   J.A.2054.   The district court held a hearing on July 22, at which Citibank again confirmed that the Argentine-law bonds in dispute "are exchange bonds" and "were part of the 2005 or the 2010" exchanges.   J.A.2139.   The court took the matter under advisement.

The next day, however, Citibank submitted a letter to the court asserting that some U.S.-dollar-denominated Argentine-law bonds are not in fact Exchange Bonds because they were not issued in the 2005 or 2010 exchange offers.   Citibank

---

[3]   Plaintiffs consented to orders that would exclude *peso*-denominated Exchange Bonds, *see* J.A.2121, 2152, and did not seek reconsideration with respect to those bonds.   Those bonds are not at issue in this appeal.

15

cited bonds issued in April 2014, in connection with a settlement of other claims following Argentina's expropriation of Repsol's stake in YPF (an Argentine oil and gas firm). J.A.2175-76. These bonds issued to Repsol, Citibank claimed, had been issued using the same International Securities Identification Number (the "Common ISIN") as one series of U.S.-dollar-denominated Argentine-law Exchange Bonds (ARARGE03E113), rendering them "fungible" with and "identical" to earlier-issued exchange bonds. *Id.* Even though other Argentine-law, U.S.-dollar Exchange Bonds were issued under *other* ISINs—and thus were neither fungible with nor identical to bonds issued to Repsol—Citibank argued that the Injunctions should not apply to *any* Argentine-law, U.S.-dollar-denominated bonds. Several days later, on July 27, Argentina filed its own letter asserting—without citation of any record evidence or public records—that still more U.S.-dollar-denominated Argentine-law bonds were not issued at the time of the 2005 or 2010 exchanges and thus were not Exchange Bonds. J.A.2180-81.

4.    On July 28, 2014, the district court issued the July 28 Order granting Plaintiffs' motion for partial reconsideration and rescinded its June 27 order insofar as it had "clarified" that the Injunction did not apply to U.S.-dollar-denominated Argentine-law bonds. S.A.3-4. Because the grace period for payment on many of the Argentine-law bonds (including the bonds issued to Repsol) would expire in only two days (on July 30), and "not wish[ing] to upset the settlement with

16

Repsol," the district court permitted that "one-time payment on the dollar-denominated exchange bonds." S.A.4. But going forward, "[a]fter July 30," the court made clear, the Injunction will apply to the "dollar-denominated exchange bonds" governed by Argentine law. *Id.* It further directed the parties "to devise a way to distinguish between the Repsol bonds and the exchange bonds before the next interest payment is due." *Id.*

Argentina and Citibank each appealed the July 28 Order.

### E.    Argentina Announces Its Latest Plan To Evade The Injunction

Only 10 days ago—while these appeals were pending—Argentina publicly announced yet another plan to evade the Injunction, again in direct contravention of the district court's orders. Argentina announced its intention to remove entirely from the Exchange Bond payment process the third parties that thus far have complied with the Injunction. In a nationwide address, President Kirchner explained that her government would submit legislation to the Argentine Congress to allow all Exchange Bondholders to swap their non-Argentine-law Exchange Bonds for new bonds with identical financial terms and conditions, and for the same nominal value as those of the Exchange Bonds payable in Argentina (the bonds subject to this appeal). *See* Ken Parks & Taos Turner, *Argentina Moves to Pay Exchange Bondholders in Argentina*, Wall St. J. Online (Aug. 20, 2014), http://tinyurl.com/jw3bs94; Charlie Devereux et al., *Argentina's Bonds Decline on*

17

*Plan to Offer Local-Law Swap*, Bloomberg.com (Aug. 20, 2014), http://tinyurl.com/pbdux5m; *see also* D.E.333-3 (text of proposed legislation). The next morning, Minister of Economy Kicillof confirmed that the proposed legislation will seek to enable holders of Exchange Bonds to swap their bonds for new bonds that use only Argentine institutions to facilitate payments. *See Kicillof Warns "No Change of Payment Jurisdiction,"* Buenos Aires Herald (Aug. 20, 2014), http://tinyurl.com/o2ta68r.

Argentina's plan would replace BNYM with an affiliate of Banco de la Nacion Argentina ("BNA"), which is wholly owned by the Republic. Unlike BNYM—which has refused to participate in Argentina's violations of the Injunction—BNA presumably will process Argentina's illegal Exchange Bond payments without reservation. The plan thus appears to be precisely the same as the proposal that the district court declared on June 20 would violate the Injunctions, and which the court ordered Argentina not to carry out.

The district court convened an emergency hearing on August 21 to address Argentina's latest plan. After hearing from both sides, the district court again ruled in no uncertain terms that Argentina's "proposal is a violation of the current orders of this Court and of the Second Circuit. It is illegal, and the Court directs that it cannot be carried out." Aug. 21, 2014 Hr'g Tr. 21. As the court explained, "[t]he proposal of August 19 would provide for payment of interest to the exchangers, but

18

no payment of the other obligation; therefore, the proposal of August 19 is not a lawful carrying out of the obligations of the Republic." *Id.* at 22.

## SUMMARY OF ARGUMENT

As demonstrated in Aurelius's brief, this Court need not and cannot reach the merits of Argentina's and Citibank's appeals because it lacks appellate jurisdiction over both. Even if the Court could adjudicate these appeals, it should reject both appellants' challenges to the July 28 Order on the merits. Neither Argentina nor Citibank has proffered any persuasive reason to overturn the district court's July 28 Order confirming the Injunction's application to U.S.-dollar-denominated Exchange Bonds that are governed by Argentine law.

A. The Injunction by its terms unambiguously applies to *all* Exchange Bonds—which it explicitly defines as bonds issued by Argentina in the 2005 and 2010 exchanges (or any later substitutes for such bonds). To the extent that Argentina and Citibank seek "clarification" to permit payments on Exchange Bonds, the Injunction's text flatly forbids it. That various *other* bonds issued by Argentina in different offerings may not constitute Exchange Bonds is irrelevant; the July 28 Order under review expressly dealt only with bonds that *are* "Exchange Bonds" under the Injunction. Nor does any of the other attributes identified by Argentina or Citibank of the particular Exchange Bonds at issue here—such as the law that governs them, or the intermediary that processes payments—make any

19

difference. None of those attributes has any foothold in the Injunction's text, which is clear and controlling with respect to any request for "clarification."

**B.** Because the Injunction—which this Court has affirmed—plainly prohibits the payments that Argentina and Citibank seek permission to make, the district court could not allow such payments *unless* a significant change in law or facts was properly demonstrated that justified *modifying* the existing Injunction. Neither Argentina nor Citibank, however, even properly sought modification. Indeed, neither one could validly do so under Federal Rule 60(b): Argentina's unclean hands and open defiance of judicial authority preclude it from seeking what amounts to equitable relief. And Citibank is not a party to the case, and therefore is not authorized by Rule 60(b)'s plain terms to seek modification.

In any event, even if either one could and did properly seek modification, even on appeal neither has shown that *any* modification of the Injunction—much less one that would create a gaping hole encouraging wholesale evasion—was warranted. Nearly all of the reasons that Argentina and Citibank advance for altering the Injunction raise no new legal or factual development; most were or could have been raised in the prior appeals in this Court, and are therefore now foreclosed. And the only two asserted grounds for modification that even arguably involve new circumstances—Argentina's renewed insistence that Citibank aid Argentina's violation of the Injunction, and Argentina's commingling of Exchange

Bonds with new bonds in a calculated attempt to frustrate enforcement of the Injunction—do not remotely justify the drastic overhaul that appellants seek.

Indeed, granting the modification that Argentina and Citibank demand to carve out the Argentine-law Exchange Bonds from the Injunction would provide Argentina with a roadmap for evading the Injunction on a larger scale—which the Republic will certainly try to exploit, as its most recent acts of defiance and evasion attest. This Court should not tolerate, much less facilitate, such frustration and evasion of federal-court orders. If it reaches the merits of either appeal, it should affirm the district court's ruling that faithfully applied the Injunction's unambiguous terms.

## STANDARD OF REVIEW

"'When an issuing judge interprets his own orders,'" this Court "'accord[s] substantial deference to the draftsman, and [it] will not reverse the judge's construction of an ambiguity in his own words except for abuse of discretion.'" *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 103 (2d Cir. 2009) (quoting *United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005)). The Court also reviews only "for abuse of discretion" a "decision whether to modify a[n] … injunction," as such a decision "involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a[n] … injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005).

# ARGUMENT

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DECLINING TO EXEMPT ARGENTINE-LAW EXCHANGE BONDS FROM THE INJUNCTION.

If the Court reaches the merits of Argentina's or Citibank's appeal, neither appellant offers any basis to overturn the district court's July 28 Order. Both claim, at bottom, that the district court should have allowed Citibank to make payments on certain Exchange Bonds—denominated in U.S. dollars and governed by Argentine law—held by customers of Citibank's Argentine branch, even though no ratable payment is made to Plaintiffs. That request, however, is flatly foreclosed by the plain terms of the Injunction. The district court was not free to disregard the Injunction's requirements—which this Court has already affirmed, and the Supreme Court declined to disturb—but was (and is) duty-bound to apply it unless and until it is properly modified. Neither Argentina nor Citibank, however, did or even could properly request any modification of the Injunction to exclude the Exchange Bonds at issue. And on appeal neither has shown that any changed legal or factual circumstance could justify the sweeping modification they propose—much less that the district court abused its discretion by declining to adopt that revision, which would gut the Injunction and invite further evasion.

## A. The Existing Injunction Clearly Applies To The Argentine-Law Exchange Bonds That Argentina And Citibank Seek To Exclude.

Citibank urged the district court to "constru[e]" the existing Injunction not to encompass certain Exchange Bonds governed by Argentine law held by Citibank's customers, and thus to allow Citibank Argentina to process payments on such bonds. D.E.266, at 24. As the district court correctly determined in the July 28 Order, however, the existing Injunction clearly encompasses those Exchange Bonds regardless of the law under which they are governed. Indeed, that conclusion is compelled by the Injunction's plain text, and certainly lay within the district court's broad discretion in interpreting its own order. Argentina's and Citibank's contrary arguments are baseless.

### 1. The Injunction's Text Unambiguously Applies To All Bonds Issued By Argentina In The 2005 And 2010 Exchanges.

"Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court." *Spallone*, 399 F.3d at 424. In ascertaining the issuing court's intent, the order "must ordinarily be interpreted by examination of only the four corners of the document." *Id.* (internal quotation marks omitted). A court may look beyond an order's text only if that text is ambiguous. *See id.*

That is especially true of injunctions, which are explicitly required by the Federal Rules to specify the "acts restrained or required" in "reasonable detail."

Fed. R. Civ. P. 65(d)(1)(C).  As this Court has held, "Rule 65(d) 'is satisfied only if the enjoined party'"—here, Argentina—"'can ascertain from the four corners of the order precisely what acts are forbidden' or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008) (citation omitted).  This "four corners" rule serves both "'to prevent uncertainty and confusion on the part of those to whom the injunction is directed,' and to ensure 'that the appellate court knows precisely what it is reviewing.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (citation omitted).  For the same reasons, in *interpreting* an injunction—especially one an appellate court has already reviewed and affirmed—a court should hew to an injunction's four corners.

Here, the Injunction's text is unambiguous and unmistakably applies to the Exchange Bonds as to which Citibank sought clarification.  The Injunction requires Argentina to make a ratable payment to Plaintiffs "[w]henever the Republic pays any amount due under" the "Exchange Bonds," and forbids Argentina from "making any payment under the terms of the Exchange Bonds without" *also* making the required ratable payment to Plaintiffs.  J.A.1462-63.  And it defines "Exchange Bonds" simply as "the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future." J.A.1462.

The Injunction's straightforward definition of "Exchange Bonds" encompasses the *only* bonds addressed by the district court's July 28 Order and at issue on appeal. Citibank asked the district court to deem exempt from the Injunction certain "Exchange Bonds" that "were issued by the Republic of Argentina in 2005 and 2010." D.E.266, at 1, 4; *see also* J.A.2139 (Citibank's counsel conceding that the bonds at issue "are exchange bonds" and "were part of the 2005 or the 2010" exchanges). The July 28 Order rejected that request in relevant part, making clear that the "dollar-denominated exchange bonds" at issue in this appeal are subject to the Injunction. S.A.4.

Argentina asserted below and reiterates on appeal—each time without any supporting evidence—that many of its outstanding dollar-denominated Argentine-law bonds are *not* Exchange Bonds because they were not issued in the 2005 or 2010 exchange offers, but in unrelated issuances between 2007 and 2011. J.A.2180-81; Argentina Br. 4-5, 14, 20, 24-25. That unsubstantiated assertion, however, is entirely irrelevant. The July 28 Order clarified only that "dollar-denominated *exchange bonds*" are subject to the Injunction. S.A.4 (emphasis added). It says nothing at all about the Injunction's application to any obligations that are *not* "Exchange Bonds." The district court's conclusion that such "exchange bonds" are covered by the Injunction was correct regardless of whether *other* bonds are covered.

### 2.    Argentina's And Citibank's Claims That The Bonds At Issue Are Not Exchange Bonds Have No Basis In The Injunction's Text.

Seeking to evade the Injunction's unambiguous scope, Argentina and Citibank contend that the district court erred in holding the Injunction applicable to dollar-denominated Argentine-law bonds issued in the 2005 and 2010 exchanges because those bonds differ in various respects from the New York-law and English-law Exchange Bonds covered by the Injunction.  Argentina Br. 27-28; Citibank Br. 28-29.    That claim is meritless.    The district court—as the "draftsman" of the Injunction—was "'uniquely situated to understand the intended meaning'" of "his own orde[r]."  *Spallone*, 399 F.3d at 423 (citation omitted). Argentina and Citibank do not come close to overcoming the "substantial deference" (*id.*) owed to the district court's interpretation.

Indeed, none of the purported differences that Argentina and Citibank assert should exempt Argentine-law Exchange Bonds from the Injunction has any basis in the Injunction's definition of "Exchange Bonds."  That the bonds at issue here are governed by Argentine (rather than U.S.) law (Argentina Br. 27) is immaterial. The Injunction's definition draws no distinction based on the law that governs a particular bond.  Likewise, neither the specific legal authorization under which a bond was issued, whether a bond is expressly made subject to U.S. jurisdiction, nor appellants' assertion that the payment process occurs entirely in Argentina (*but see*

26

J.A.2054 (explaining steps of payment process for certain Argentine-law bonds occurring in New York)) has any bearing.  *Cf.* Argentina Br. 9, 27-28; Citibank Br. 10, 28-29.  None of those attributes is mentioned in the Injunction's definition of "Exchange Bonds."  All that matters is whether a bond was issued in the 2005 or 2010 exchanges (or is a substitute for one that was).

Argentina contends that the Injunction's definition of "Exchange Bonds" is implicitly limited "to the Exchange Bonds for which BNYM serves as the bondholders' Trustee" because the district court's opinion accompanying the amended Injunction described the payment process for certain Exchange Bonds as involving BNYM.  Argentina Br. 21 (citing J.A.1450).  Because BNYM is not the trustee for the bonds at issue here, Argentina argues, they cannot be Exchange Bonds.  *Id.*  The Injunction's text, however, refutes the Republic's contention.  The Injunction does not restrict "Exchange Bonds" to bonds involving BNYM (or any particular trustee).  J.A.1462-63.  To the contrary, its enumeration of "participants" covered by the Injunction lists "the indenture trustees and/or registrars under the Exchange Bonds (including *but not limited to* The Bank of New York Mellon f/k/a/ The Bank of New York)."  J.A.1463 (emphasis added).

Argentina repeatedly suggests that payments on the Exchange Bonds at issue here do not violate the violate the Equal-Treatment Provision and therefore cannot be covered by the Injunction.  *See* Argentina Br. 16, 19, 24, 26.  But the Equal-

Treatment Provision of the FAA *does* apply to the bonds at issue in this appeal. The Provision requires that "[t]he payment obligations of the Republic under the Securities" held by Plaintiffs "shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement)."  J.A.377.  The Argentine-law Exchange Bonds at issue in this appeal—which Argentina seeks to continue to treat more favorably than its obligations under the FAA Bonds—are "External Indebtedness" within the meaning of the Equal-Treatment Provision.  They are "obligations … for borrowed money or evidenced by securities, debentures, notes or other similar instruments" that are "denominated or payable … in a currency other than" Argentine pesos—namely, U.S. dollars—which (with an exception appellants have not argued is applicable here) is all the Equal-Treatment Provision requires.  J.A.391.[4]

In any event, even if any of the bonds at issue were not "External Indebtedness" as defined in the Equal-Treatment Provision, that is not controlling. It is the Injunction itself—not the contractual provision the violation of which gave rise to the Injunction—that controls.  As this Court previously held, "[o]nce the

---

[4]  Moreover, neither Argentina nor Citibank advanced in their opening briefs—nor preserved in the district court—any argument that the dollar-denominated Exchange Bonds at issue do not constitute External Indebtedness.  Any such argument thus is "waived."  *Sherman v. Town of Chester*, 752 F.3d 554, 568 n.4 (2d Cir. 2014).  The *peso*-denominated Argentine-law Exchange Bonds are not at issue in this appeal.  *Supra* p. 15 n.3.

district court determined that Argentina had breached the [Agreement] and that injunctive relief was warranted, the court had considerable latitude" to craft an appropriate remedy, and "[t]he performance required by a decree *need not ... be identical* with that promised in the contract." *NML I*, 699 F.3d at 261 (emphasis added). The district court was therefore free to adopt "an order of specific performance" that goes beyond what the Equal-Treatment Provision requires "so long as it achieves a fair result under the totality of the circumstances." *Id.* (internal quotation marks omitted). Argentina cannot credibly claim that fairness demands confining equitable relief to the literal terms of its contractual obligations—especially given its own continued efforts to evade those obligations by restructuring its debts and payment processes.

### B. There Is No Basis For Modifying The Injunction To Exclude The Argentine-Law Exchange Bonds At Issue From The Injunction.

Because the existing Injunction unambiguously applies to the Exchange Bonds that Argentina and Citibank seek to exempt, the district court was (and is) bound to apply the Injunction as written, unless and until it is properly modified. Indeed, because this Court affirmed the Injunction, and the Supreme Court denied review, the district court was *required* by the mandate rule to adhere to the Injunction, and could not entertain any challenges to it that were "expressly or impliedly decided by" this Court or were "ripe for review at the time of [the] initial appeal but w[ere] nonetheless foregone." *United States v. Ben Zvi*, 242 F.3d 89, 95

29

(2d Cir. 2001) (emphasis omitted); *cf. Bridgeport Coal. for Fair Representation v. City of Bridgeport*, 26 F.3d 280, 281-82 (2d Cir. 1994) (granting mandamus to undo unauthorized "modification [of an injunction] on remand"), *vacated on other grounds*, 512 U.S. 1283 (1994).

The district court, therefore, could exempt the Argentine-Law Exchange Bonds at issue from the Injunction *only* if the court determined that a modification of the Injunction was warranted by "a significant change in the law or facts." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984). Here, however, Argentina and Citibank did not, and indeed *could* not, properly seek such modification. And even if either had done so, on appeal neither comes close to demonstrating any changed circumstance that could remotely justify the drastic modification that they seek. Indeed, altering the Injunction as they now propose to permit payment on a large class of Argentine-law bonds would entirely subvert the Injunction and provide Argentina with a roadmap for wholesale evasion of it.

### 1. Argentina And Citibank Did Not And Could Not Properly Seek Modification Of The Existing Injunction.

Argentina and Citibank cannot be heard to complain on appeal that the district court declined to modify the Injunction because neither one did or even could properly *request* such modification. "[T]he appropriate vehicle for modifying a permanent injunction that has prospective effect" is a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(5). *Baum v. Blue*

*Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008); *see also Advance Pharm., Inc. v. United States*, 391 F.3d 377, 400-01 (2d Cir. 2004).  Rule 60(b)(5) permits "a party or its legal representative" to seek relief from a final judgment or order because (as relevant here) "applying it prospectively is no longer equitable."  Fed. R. Civ. P. 60(b)(5).  Neither Argentina nor Citibank, however, even requested that relief, and both would have been barred from doing so.

> **a.   Argentina Did Not Request Modification, And Its Unclean Hands And Defiance Of Judicial Authority Categorically Foreclose Granting It Equitable Relief.**

Argentina never asked the district court to modify the Injunction.  Although it submitted correspondence to that court and its counsel appeared at a hearing concerning Citibank's request for clarification, the Republic itself filed no motion requesting that the Injunction be amended to exclude certain Argentine-law Exchange Bonds.  Any such motion, moreover, would have been flatly foreclosed by the Republic's continuing bad faith and open disregard for judicial authority.

The deeply rooted "unclean hands doctrine" "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 819 (1945).  That bedrock principle forecloses, among other things, granting "equitable relief" that excuses compliance with a court order to a defendant who has "persistently endeavored to evade the lawful jurisdiction of the

31

District Court and undermine its careful and determined work" and demonstrated "utter disregard for the District Court's orders." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 127-29 (2d Cir. 2009); *see also Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir. 1996) (the "equities … are changed by [the defendant's] non-cooperation with a system from which he demands elaborate procedural deference").

A clearer case for application of that principle is difficult to imagine. Argentina seeks what amounts to equitable relief:  It urges this Court to hold that the district court should have excused the Republic from certain requirements of the Injunction—which under Rule 60(b)(5) required showing that "applying" an existing equitable order (the Injunction) "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).  But the Republic's actions are the epitome of bad faith and unclean hands.  It has attempted to defy, frustrate, and evade the district court's and this Court's orders at every turn.  Indeed, as this Court recounted in the prior appeal, "counsel for Argentina told the panel" that the Republic "'would not voluntarily obey' the district court's injunctions, even if those injunctions were upheld by this Court." *NML II*, 727 F.3d at 238.  And "Argentina's officials ha[d] publicly and repeatedly announced their intention to defy any rulings of this Court and the district court with which they disagree." *Id.*

Argentina has since made good on those threats of disobedience.  Despite assuring the Supreme Court that it *would* "comply with the orders under review,"

Reply Br. 13, *NML Capital.*, No. 13-990, since the denial of certiorari Argentina has publicly repudiated the Injunction affirmed by this Court.[5]  And it flagrantly and repeatedly defied both the Injunction and the district court's further orders clarifying the Injunction's requirements.  In June 2014, in direct contravention of the Injunction, Argentina brazenly attempted to make a payment on the Exchange Bonds of more than $800 million without making the required payment to Plaintiffs.  The Republic also has sought to evade the Injunction by changing the Exchange Bonds' payment mechanisms, so that the Exchange Bonds currently paid under New York and English law via intermediaries that respect U.S. court orders would instead be paid in Argentina.  Three times in the past year it has publicly announced plans to evade the Injunctions by permitting Exchange Bondholders to replace their bonds with nearly identical instruments payable within Argentina.  Each time, the district court has responded unequivocally that Argentina's proposals contravene the existing orders.  *See* J.A.1923, 1931.

Through Argentina's words and deeds, in short—culminating in its most recent scheme to restructure its payment process to facilitate prohibited

---

[5]  *See*, *e.g.*, Alison Frankel, *Argentina's Comments put US Lawyers In Awkward Spot*, Reuters (June 19, 2014), http://tinyurl.com/k8m9pbb; *see also* Linette Lopez, *Argentina Put a Scathing Full-Page Ad in Three Major Newspapers This Weekend*, Business Insider (June 23, 2014), http://tinyurl.com/qyztvhg; Alison Frankel, *Did Argentina Lie to the Supreme Court?*, Reuters (June 2, 2014), http://tinyurl.com/ktwzoxf.

payments—it has shown nothing but contempt for the authority of the district court or this Court.  And its repeated efforts to circumvent the Injunction affirmed by this Court by any means available—including in ways the district court has explicitly ruled are unlawful—and to evade its contractual obligations to Plaintiffs are the embodiment of bad faith.  Having thus soiled its hands and thumbed its nose at federal judicial authority, Argentina rendered itself ineligible to seek equitable relief in the form of modification of the Injunction.  It cannot plausibly claim on appeal that the district court abused its discretion by withholding such relief.

### b. Citibank Did Not And, As A Non-Party, Could Not Properly Seek Modification Under Rule 60(b).

The motion that gave rise to the July 28 Order was instead filed by Citibank, a non-party that alleges it is affected by the Injunction.  But Citibank's motion also did not properly request a modification of the Injunction.  Its filing did not even *cite* Rule 60(b), much less argue that Rule 60(b)'s standard was satisfied.  Instead, it renewed Citibank's May 2013 request for "clarification" of the Injunction.  *See* D.E.266, at 1; *cf.* D.E.215.  And although the caption and one sentence of Citibank's renewed motion also referred to "modification" of the Injunction, in substance it asked the district court to "constru[e]" the Injunction in a particular way (contrary to its text), D.E.266, at 1, 24, which that court properly declined to do.

34

Citibank's decision to seek a "constru[ction]" of the Injunction was no accident. Under the plain terms of Rule 60(b), "only 'a party or its legal representative' may seek relief pursuant to Rule 60(b)." *Estate of Shefner ex rel. Shefner v. Beraudiere*, __ F. App'x __, 2014 WL 4067184, at *2 (2d Cir. Aug. 19, 2014) (quoting Fed. R. Civ. P. 60(b)). Citibank undisputedly is neither. It therefore "lack[ed] standing to make a [Rule 60(b)] motion." *Nat'l Acceptance Co. of Am. v. Frigidmeats, Inc.*, 627 F.2d 764, 766 (7th Cir. 1980); *see* 11 C. Wright et al., *Federal Practice & Procedure* § 2865 (3d ed. updated 2014). Had Citibank requested modification of the Injunction under Rule 60(b), its motion would have been dead on arrival. Instead, as this Court has already made clear, the proper course for third parties such as Citibank to challenge the Injunction's application to specific conduct is to assert such challenges "*if and when* [such third parties] are summoned" to the district court to show cause why they should not be held in contempt "for having assisted Argentina in violating" the Injunction. *NML II*, 727 F.3d at 244 (emphasis added).

*****

The district court thus did not have before it any proper request to modify the Injunction. It could not have abused its discretion by failing to do so.

35

**2.    Neither Argentina Nor Citibank Identifies Any Valid Basis For Modifying The Injunction To Exclude The Argentine-Law Bonds.**

Even if either Argentina or Citibank could and did properly seek modification of the Injunction, it would make no difference because, even on appeal, neither has demonstrated that the high standard for seeking modification of an injunction is satisfied. "[A] court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts." *Sierra Club*, 732 F.2d at 256. And under Rule 60(b), Argentina and Citibank bear the burden of "demonstrat[ing] exceptional circumstances" that warrant modification. *Uzan*, 561 F.3d at 126.

They do not come close. Indeed, nearly all of the grounds for modification that Argentina and Citibank assert are not based on any "significant change in the law or facts," *Sierra Club*, 732 F.2d at 256, but on circumstances that existed when the Injunction was entered in its current form. Indeed, several of the asserted grounds for excluding the bonds at issue were already considered and rejected by this Court. Those rulings are binding both as controlling precedent and as the law of this case, which Argentina and Citibank cannot now collaterally attack. *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004); *United States v. Melendez-Carrion*, 820 F.2d 56, 60 n.1 (2d Cir. 1987). And *all* of the grounds that were "ripe for review at the time of [the prior] appeal but w[ere] nonetheless

36

foregone" must now be "considered waived" and equally "bar[red]" by "the law of the case doctrine." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (punctuation omitted).  The only arguably new developments that Argentina or Citibank cite do not remotely justify the major rewriting of the Injunction that they seek.

### a.    The Injunction Validly Applies To Third Parties That Facilitate Forbidden Payments On Exchange Bonds.

Citibank contends (Br. 25-26) that as a non-party, it can be bound by the Injunction only for acting in "active concert or participation" in Argentina's violation of the Injunction, Fed. R. Civ. P. 65(d)(2), and that processing payments for Argentina to holders of Argentine-law Exchange Bonds (as Citibank seeks to do) does not qualify.  Citibank Br. 25-26.  That claim does not rest on any new fact post-dating the Injunction.  Citibank does not allege that its role in processing payments recently changed and could not have been raised in the prior appeal.

Indeed, Citibank's argument was considered and squarely rejected in this Court's prior opinion, which affirmed the Injunction's application, by "automatic operation of Rule 65," to third-party intermediaries like Citibank.  *See NML II*, 727 F.3d at 244.  The Court credited the district court's finding that, "to prevent Argentina from avoiding its obligations to plaintiffs," the Injunction "must reach the process by which Argentina pays Exchange Bondholders," and thus "foreign payment system participants" who facilitate that process at Argentina's behest.  *Id.*

37

The Court therefore rejected a claim by other third parties that the Injunction could not validly apply to participants in Argentina's payment process.  *See id.*

Citibank's claim that it is not in fact facilitating any unlawful conduct because, by the time funds reach Citibank, Argentina has already "los[t] control of the funds" by transferring them to an intermediary (Citibank Br. 25) contradicts the letter and spirit of Rule 65(d).  By its terms the Rule applies to actions of non-parties if undertaken "in active concert or participation" with a named party.  Indeed, the whole purpose of the Rule, deeply rooted in the common law, is to prevent a party from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors" who are not themselves named parties.  *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).  Argentina cannot evade the Injunction simply by subdividing improper payments into a series of discrete steps, each handled by a different surrogate.  Nor does the fact that the Injunction has already been violated once the payment process has begun and funds have passed from Argentina to Caja de Valores S.A. (via the Central de Registro y Liquidación de Instrumentos de Endeudamiento Publico)—before they reach Citibank—mean that Citibank is then free to complete the payment process by helping the funds reach the ultimate intended recipients.  *See*, *e.g.*, *Goya Foods, Inc. v. Wallack Management Co.*, 290 F.3d 63, 68, 75-76 (1st Cir. 2002); *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985).  That a defendant has already violated a court order by setting a

process in motion hardly entitles others to see that process through, completing the harm.

Citibank's assertion (at 25-26) that, by facilitating prohibited payments, it does not subjectively desire to aid Argentina's defiance of the Injunction—but merely wishes to carry out its duties under local law—is beside the point. As this Court has held, a party whose actions assist the violation of an injunction—even if its purported *reasons* for acting are "independent" of any desire to assist a violation—is "not *acting* independently," "which is the end of the matter." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010) (emphasis added). The Rule 65(d) inquiry "is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation." *Id.* (quotation marks omitted); *see, e.g.*, *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996). Here, Citibank is undeniably aware that Argentina is forbidden by the Injunction from making payments on Exchange Bonds. And its processing of payments at Argentina's behest is part and parcel to Argentina's violation of the Injunction. Citibank is thus properly forbidden from taking such steps. Whatever relevance its intentions might have in future contempt proceedings, they make no difference here.

### b.    None Of The Attributes Of The Argentine-Law Bonds Supports Excluding Them From The Injunction.

Argentina and Citibank argue that supposed differences among the Exchange Bonds justify amending the Injunction to exclude the Argentine-law Exchange Bonds.  Argentina Br. 27-28; Citibank Br. 28-29.  Like Citibank's role in the payment process, however, none of these attributes of the Argentine-law bonds is a new development that justifies amending the Injunction.  Indeed, nothing prevented Argentina or Citibank from raising these issues in the prior appeal—as another third party, BNYM, did in objecting to the Injunction on other similar grounds.  *See NML II*, 727 F.3d at 242-45.  Because neither Argentina nor Citibank did so, their arguments must now be "considered waived." *Johnson*, 564 F.3d at 99.

In any event, even now neither Argentina nor Citibank demonstrates why these attributes make it "no longer equitable" to apply the Injunction previously affirmed by this Court, to the Argentine-law bonds at issue here.  Fed. R. Civ. P. 60(b)(5).  Neither the fact that these particular Exchange Bonds were issued under presidential decrees rather than a trust indenture, that they are paid through Caja rather than BNYM, nor that they are not expressly made subject to New York law or U.S. jurisdiction makes it any less equitable to hold Argentina to its promise to treat its obligations to Plaintiffs equally with others, or to prevent third parties from assisting Argentina in breaching that pledge.

40

      **c.**       **The Injunction Validly Applies To The Argentine-Law Bonds Regardless Of Where The Funds Used To Make Payments Are Located.**

Citibank asserts that one attribute of the Argentine-law bonds at issue requires exempting them from the Injunction as a matter of law:  Because the funds used to pay these bonds are located outside the United States, Citibank argues (*but cf.* Aurelius Br. 7 n.1), forbidding payments with those funds would violate restrictions in the Foreign Sovereign Immunities Act ("FSIA") on "attachment," "arrest," or "execution" on certain property of foreign states.  28 U.S.C. § 1609; *see* Citibank Br. 31-34.  This contention, too, is not based on any "significant change in the law or facts," *Sierra Club*, 732 F.2d at 256, and in any event it is flatly foreclosed by this Court's prior rulings.

As this Court has expressly held, the Injunction cannot violate Section 1609 because it "do[es] not attach, arrest, or execute upon *any* property," much less property immune from such remedies under the FSIA.  *NML I*, 699 F.3d at 262 (emphasis added).  Instead, it merely "direct[s] Argentina to comply with its contractual obligations not to alter the rank of its payment obligations," and "can be complied with without the court's ever exercising dominion over sovereign property."  *Id.*; *see also NML II*, 727 F.3d at 240-41.  The district-court decisions Citibank cites—both of which addressed attachments—are therefore entirely inapposite.  *See EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415, 23-24

41

(S.D.N.Y. 2012); *Aurelius Capital Partners, LP v. Republic of Argentina*, 2010 WL 768874, at *2, *4 (S.D.N.Y. Mar. 5, 2010).[6]

Because the Injunction is not limited by the FSIA's restrictions on attachments, it properly applies to conduct outside the United States. "[A] federal court sitting as a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere. And federal courts can enjoin conduct that has or is intended to have a substantial effect within the United States." *NML II*, 727 F.3d at 243 (punctuation and citations omitted); *accord Mickalis*, 645 F.3d at 146 n.30. Thus, as the Court has held, the Injunction may "extraterritorially enjoin payment systems that deliver funds to Exchange Bondholders," even if those payment systems operate outside the United States, and may bind any party within the district court's personal jurisdiction. *NML II*, 727 F.3d at 243-44. Indeed, it is "necessary" that the Injunction "reach the process by which Argentina pays Exchange Bondholders," "regardless of whether that conduct occurs here or abroad." *Id.* Neither Argentina nor Citibank is immune to

---

[6] Moreover, the only property that Citibank claims is improperly restrained is explicitly *not* immune under the FSIA from attachment: The FSIA shields only "property *in the United States* of a foreign state," 28 U.S.C. § 1609 (emphasis added), but the premise of Citibank's argument is that the funds used to pay the Argentine-law bonds "are not in the United States." Citibank Br. 31. Only last Term the Supreme Court repudiated reading into the FSIA unwritten limitations on federal-court authority on issues the statute does not address. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2256-58 (2014).

that court's jurisdiction. Both are thus properly bound regardless of where their actions are undertaken.

**d.     The Separate-Entity Rule Does Not Bar Application Of The Injunction To The Argentine-Law Bonds.**

Citibank's claim (at 34) that the "separate entity rule" forbids applying the Injunction to prevent payments by Citibank's Argentine branch—Citibank Argentina—likewise presents no change in law or facts, and similarly fails on the merits because the legal principle underlying the claim is inapplicable.

The separate-entity rule that Citibank invokes—under which each branch of a bank is deemed a separate entity for certain purposes—is a state-law doctrine that, like Section 1609 of the FSIA, applies only to attachment or execution, not to injunctions. *See*, *e.g.*, *Allied Maritime, Inc.*, *v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010). As district courts in this Circuit have explained, this "rule has long been applied in New York as a qualifier on the court's *attachment power* under New York law"; *but*, "where the remedy sought is an injunction or a subpoena, the 'separate entity' rule has not barred enforcement; courts have held that only personal jurisdiction over the legal entity, the bank and its branches, is necessary." *CE Int'l Res. Holdings, LLC v. S.A. Minerals P'ship*, 2013 WL 2661037, at *16-17 (S.D.N.Y. Jun. 12, 2013) (citations omitted); *accord Gucci America, Inc. v. Weixing Li*, 2011 WL 6156936, at *4 n.6 (S.D.N.Y. Aug. 23, 2011) ("[t]he separate entity rule … applies only 'for attachment purposes,'" and thus "is

43

inapposite here, where Plaintiffs merely seek" an "injunction" (citation omitted)).
Several of Citibank's own cases explicitly recognize as much.[7]

Indeed, unlike attachments and executions—which are subject to state-law restrictions, *see* Fed. R. Civ. P. 69(a)—federal-court injunctions are not governed by state-law rules at all, but instead by *federal* law, including Federal Rule 65(d). Thus, as other courts have recognized, "the question of the extent to which a federal injunction applies to non-parties is governed by Federal Rule of Civil Procedure 65(d), not by state law." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1355 (Fed. Cir. 1998); *see also Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987) ("whether a preliminary injunction should be granted is generally one of federal law even in diversity actions"). And, unlike Rule 69, "Rule 65, which governs injunctions, does not incorporate state-law standards for granting relief." *In re M.B. Int'l W.W.L.*, 2012 WL 3195761, at *9 (S.D.N.Y. Aug. 6, 2012).

Citibank unsurprisingly cannot muster a single case applying the separate-entity rule to an injunction. The few federal cases that it cites involved applications for prejudgment attachment or postjudgment execution—not an

---

[7] *See, e.g.*, *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965); *Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996); *see also Cronan v. Schilling*, 100 N.Y.S.2d 474, 477 (Sup. Ct. N.Y. Cnty. 1950).

injunction.  *See*, *e.g.*, *John Wiley & Sons, Inc. v. Kirtsaeng*, 2009 WL 3003242, at *2 (S.D.N.Y. Sept. 15, 2009); *Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*, 2012 WL 919664, at *2 (S.D.N.Y. Mar. 14, 2012).  The same is true of the so-called "codifications" of the rule that Citibank tenders, which have nothing to do with the applicability of injunctive relief.  *See* 12 U.S.C. § 633 (excusing banks from repaying deposits made at foreign branches if payment is prevented by war or an act of foreign government); N.Y. Banking Law § 138(1) (limiting liability of New York banks for contracts to be performed at foreign branches); N.Y. Uniform Comm. Code §§ 4-A-105, 5-116(b), 8-112(c) (state-law provisions discussing funds transfers, letters of credit, and investment securities).[8]

Nor does the federal law that *does* govern injunctions apply any limitation analogous to the state-law separate-entity rule for attachments.  The Supreme Court has confirmed that the alleged "separateness" of a bank's various branches does not prevent a federal court from enjoining the activities of a foreign branch.  *See United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965).  To the

---

[8] Two of the state-court cases Citibank cites applied the single-entity rule to bar enforcement of subpoenas seeking documents held at foreign bank branches.  *See Ayyash v. Koleilat*, 38 Misc. 3d 916 (Sup. Ct. N.Y. Cnty. 2012); *Cronan*, 100 N.Y.S.2d 474.  Neither case, however, addressed an injunction.  Indeed, the courts in each case appear to have been concerned that attachment or execution was the plaintiffs' ultimate objective.  *See Ayyash*, 38 Misc. 3d at 926; *Cronan*, 100 N.Y.S.2d at 476-77.  Even that expansion has been criticized, *see CE Int'l*, 2013 WL 2661037, at *17, but in any event provides no support for further extending the doctrine to injunctions.

contrary, the Court held, because the district court had personal jurisdiction over the home office of the bank (based in the United States), and because that home office had some control over its foreign branch, "[t]he branch bank's affairs are, therefore, as much within the reach of the *in personam* order entered by the District Court as are those of the home office." *Id.*  So, too, here, the district court undisputedly has personal jurisdiction over Citibank's U.S. home office—and therefore the Injunction could validly bind Citibank's Argentine branch as well. *See also Eli Lilly*, 617 F.3d at 195.

Indeed, if the separate-entity doctrine *were* applicable here, it is unclear how Citibank itself could have appellate standing to challenge the July 28 Order.  A party who is neither bound by an injunction nor directly affected by it lacks standing to appeal it.  *See NML II*, 727 F.3d at 239-40; *see also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (finding no appellate standing because "the District Court had not ordered [appellants] to do or refrain from doing anything").  By Citibank's own description, it is its Argentine branch, Citibank Argentina—not Citibank's home office in the United States—that processes payments on the dollar-denominated Argentine-law Exchange Bonds that the July 28 Order confirmed are covered by the Injunction.  Citibank Br. 8-12.

Accordingly, if it *were* true that Citibank Argentina's acts must be deemed wholly separate from those of Citibank's U.S. home office, then *only* the

supposedly separate entity, Citibank Argentina, possibly would have standing to appeal; Citibank's U.S. home office would have no cognizable interest in challenging the Injunction's application to the bonds at issue.  Only Citibank, N.A. (*i.e.*, the U.S. home office), however, appealed the July 28 Order.  *See* Citibank Notice of Appeal 2 (July 29, 2014) (Dkt. #5).  Indeed, its submissions in this Court make clear that the "request for clarification" in the district court that resulted in the July 28 Order was "not made" by Citibank Argentina, but by Citibank's "head office in the United States."  Citibank Rule 28(j) Ltr., Ex. C, at 1 (Aug. 13, 2014) (Dkt. #46).

> **e.    The Act-Of-State Doctrine Does Not Bar Applying The Injunction To The Argentine-Law Exchange Bonds.**

There is no more merit to Argentina's and Citibank's claim that the act-of-state doctrine forbids application of the Injunction to the Argentine-law Exchange Bonds.  Citibank Br. 40-43; Argentina Br. 28-29.  This claim certainly is not premised on any significant change in law or fact that occurred since the Injunction was entered that could justify a modification.  In any event, the act-of-state doctrine is irrelevant here for at least three reasons.

**i.**    The act-of-state doctrine applies only to court orders that declare invalid an official act of a foreign sovereign within its own territory—which the Injunction simply does not do.  As the Supreme Court explained in *W.S.*

*Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.*, 493 U.S. 400 (1990), the act-of-state doctrine applies only when "the relief sought or the defense interposed would … requir[e] a court in the United States *to declare invalid*—that is, "den[y] legal effect to," "declar[e] … legally ineffective," or "hol[d] … null and void"—"the official act of a foreign sovereign performed within its own territory." *Id.* at 405-06 (emphasis added).  The doctrine "does *not* establish an exception for cases and controversies that may embarrass foreign governments."  *Id.* at 409 (emphasis added).  It accordingly does not bar U.S. courts from enjoining or imposing liability for a sovereign's acts in its own territory, so long as it does not treat those acts as legally ineffective.  *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 79 n.16 (3d Cir. 1994) (rejecting act-of-state defense to an injunction barring Philippines government from taking legal action against its citizens in its own territory in retaliation for their testimony in district court).

The act-of-state doctrine thus has no bearing here.  The Injunction does not "deny legal effect to" or render invalid Argentina's payments on Exchange Bonds. Instead, it merely requires that, if Argentina does make such a payment, the Republic must honor its contractual commitment to treat its debts to Plaintiffs equally—and forbids third parties such as Citibank from assisting in evasion of that obligation.

Citibank's authorities are not to the contrary. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417 (5th Cir. 2006), did not involve the act-of-state doctrine. And *Allied Bank International v. Banco Credito Agricola de Cartago*, 757 F.2d 516 (2d Cir. 1985), held only that the act-of-state doctrine *does not apply* to debt located in the United States. *Id.* at 521-22. It did not adopt, or even consider, "the converse proposition," that the doctrine *does* apply "where a sovereign act such as the payment of its debt occurs solely within the sovereign's borders." Citibank Br. 42-43.

**ii.** The act-of-state doctrine is independently inapplicable because Argentina's actions constitute *commercial* activity, which the doctrine does not shield. As the Supreme Court has made clear, "the act of state doctrine" pertains only to a foreign state's "public acts (acts *jure imperii*)." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). "[C]ommercial" acts, however, are acts "*jure gestionis*," not acts "*jure imperii*," *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993), and thus fall outside the doctrine's reach. This Court has accordingly distinguished between "the public and governmental acts of sovereign states on the one hand and their private and commercial acts," recognizing that the former may trigger the doctrine, but the latter do not. *Republic of Philippines v. Marcos*, 806 F.2d 344, 358-59 (2d Cir. 1986). And it has held that the doctrine does not

49

"preclude judicial resolution of all commercial consequences that result from acts of foreign sovereigns within their own borders." *Allied Bank*, 757 F.2d at 521.

Argentina's actions here fall squarely within this commercial-activity exception.  It is well established that a foreign state's issuance or payment of "garden-variety debt instruments" is a commercial activity. *Republic of Argentina v. Weltover*, 504 U.S. 607, 615 (1992).  The same assuredly is true of a foreign state's *failure* to pay its debts. *See Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 695 (1976) (plurality opinion) (act-of-state doctrine "should not be extended to include the repudiation of a purely commercial obligation owed by a foreign sovereign").

    **iii.**     Even if the act-of-state doctrine otherwise would be applicable, it is nevertheless inapposite because Argentina has expressly consented to U.S. courts' adjudication of the dispute.  Citibank's own authority notes that "indications of consent to adjudication by the courts of another state are highly relevant" to the act-of-state doctrine. *Restatement (Third) of Foreign Relations Law* § 443, cmt. e (1987).  As the *Restatement* explains, "[w]hen a state has expressly subjected certain kinds of obligations to adjudication in the courts of another state, … it may be said to have acknowledged that its acts with respect to those obligations take place in the international arena and are subject to international scrutiny; in such

cases the justification for applying the act of state doctrine is significantly weaker." *Id.*; *see also Marcos*, 806 F.2d at 359.

Here, in the FAA, the Republic explicitly consented to resolve any dispute regarding compliance with that obligation in United States courts.  *See* J.A.404-05. That express assent erases any concern that the district court's adjudication of the dispute, culminating in its issuance of the Injunction enforcing Argentina's promises, improperly impinged on the Republic's authority over its internal affairs.

> **f.    Argentina's Abusive Enforcement Actions Cannot Excuse Payments On Exchange Bonds In Violation Of The Injunction.**

Citibank's similar invocation of a "foreign sovereign compulsion" defense, on the ground that complying with the Injunction would purportedly expose it to allegations of violation of Argentine law (Citibank Br. 43-45), provides no more basis to modify the Injunction to permit payments on Argentine-law Exchange Bonds.  This claim, too, is not based on any "significant change in the law or facts."  *Sierra Club*, 732 F.2d at 256.  The recent correspondence from Argentina that Citibank cites (Br. 40 n.12) does not reflect any new development, but merely reiterates the Republic's existing view that Argentine law requires Citibank to facilitate payments on the Exchange Bonds at issue despite the Injunction.

51

J.A.2209.    Citibank itself has described the Republic's letter as merely "*remind[ing]* Citibank Argentina of its obligations."  J.A.2203 (emphasis added).[9]

In any event, the "foreign sovereign compulsion" defense Citibank invokes cannot shield it from compliance with the Injunction here.   That defense—articulated primarily in the antitrust context—protects a party from liability where the U.S. court order would require action that violates another sovereign's laws. *See O.N.E. Shipping Ltd. v. Flota Mercante Grancolombiana, S.A.*, 830 F.2d 449, 453 (2d Cir. 1987); *cf. Restatement (Third) of Foreign Relations Law* § 441(1). But the doctrine assuredly has no application where, as here, the sovereign is itself *responsible* for the conduct that U.S. law forbids.  As this Court has held, actions of foreign governments need not inhibit U.S. courts from enforcing U.S. law where the litigants themselves "'deliberately courted legal impediments' to the enforcement of a federal court's orders."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004).

---

[9] The district court, moreover, never had the opportunity to address this purportedly new evidence because Argentina's supposed coercion occurred after the district court's July 28 Order.  J.A.2209.  And it is far from clear whether Citibank's contracts with Argentina or existing Argentine law would even require Citibank to take action barred by the Injunction.  *Cf.* Aurelius Br. 44-46.  These considerations are all the more reason why the Court should decline to entertain Citibank's premature challenges, which can and should be addressed with a properly developed record in future contempt proceedings.  *See NML II*, 727 F.3d at 243-44.

Here, Argentina did not merely court a legal impediment, but invented it after losing in this litigation.  The supposed Argentine-law obstacles on which Citibank relies stem from Argentina's threatened enforcement of its own laws designed to frustrate orders affirmed by this Court—despite its previous express consent to jurisdiction in the district court.  Excusing Citibank from obeying the Injunction under these circumstances would perversely reward Argentina's effort to limit the "availability or terms of relief under Rule 65" by attempting to "punish third parties"—a course this Court has rightly repudiated.  *NML II*, 727 F.3d at 242.[10]

Moreover, to the extent Citibank in fact faces obligations in Argentina inconsistent with its duties under the Injunction, that is only because Citibank, a U.S. financial institution, elected to do business in Argentina, and by doing so, like any enterprise "doing business in many jurisdictions, subject[ed] itself to potentially conflicting laws." *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 n.75 (S.D.N.Y. 2012); *see also Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 117 (2d Cir. 2014).  Equity scarcely requires excusing Citibank from

---

[10]  Citibank's claim that Plaintiffs have "not gone through the required procedure under Argentine law to enforce the Injunctions in Argentina" (Citibank Br. 22) is spurious.  The Injunction binds Argentina worldwide—including in Argentina.  Argentina thus has a legal obligation under the Injunctions regardless of whether Plaintiffs registered the Injunctions in Argentine courts.  Moreover, Argentina has changed its laws specifically to prohibit Plaintiffs from registering their judgments for execution in Argentina.  *See NML I*, 699 F.3d at 254, 260.

the Injunction based on the speculative possibility that obeying the orders of U.S. courts might subject it to sanction in Argentina if Citibank voluntarily chooses to continue doing business in (indeed, with) Argentina.  *Cf. Restatement (Third) of Foreign Relations Law* § 441 cmt. b.

### g.    The Purported Difficulty Of Distinguishing Bonds Issued To Repsol From The Argentine-Law Exchange Bonds At Issue Does Not Justify Excluding Exchange Bonds From The Injunction.

Argentina and Citibank finally contend that the Injunction must be rewritten to exclude Argentine-law Exchange Bonds altogether because Citibank cannot readily distinguish those bonds from $1.75 billion in dollar-denominated Argentine-law bonds that Argentina issued to Repsol in connection with the YPF-Repsol settlement several months *after* this Court affirmed the Injunction. Argentina Br. 24-27; Citibank Br. 26-27.  According to Argentina and Citibank, because the Republic unilaterally chose to issue bonds in connection with the Repsol settlement using the same identification number (the Common ISIN) as Argentine-law Exchange Bonds implicated by the Injunction—and because Citibank purportedly cannot tell the two categories of bonds apart—Citibank must be allowed to process payments on *all* such bonds, lest one of Argentina's new creditors be shortchanged.  That claim is predicated on facts of Argentina's own contrivance, and is entirely unsupportable.

54

To begin with, neither Argentina nor Citibank has carried its burden of demonstrating that it is actually impossible for anyone "to devise a way to distinguish between" (S.A.4) Argentine-law Exchange Bonds and bonds issued to Repsol. Both cite letters submitted by counsel, *see* Argentina Br. 6, 16-17, 25-26; Citibank Br. 15-16, which neither constitute evidence, *see United States v. Modica*, 663 F.2d 1173, 1182 (2d Cir. 1981), nor cite any evidence.[11] Citibank also cites a conclusory statement in a declaration of one of its Argentine branch's officers, which asserts without explanation that distinguishing the two categories of bonds is "not possible." J.A.2191; Citibank Br. 15-16 n.5. Tellingly, while Citibank concedes that Argentina itself, "as issuer" of both sets of bonds, "is uniquely situated to have information about these bonds," Citibank Br. 16, neither it nor Argentina offers any record evidence that even *the Republic* cannot distinguish among bonds that issued many years apart in different offerings.

Indeed, if anything, the record suggests that Argentina *is* able to distinguish between at least some Argentine-law bonds that are Exchange Bonds and other Argentine-law bonds. Argentina has not disputed Plaintiffs' observation that the September 30, 2014, payment includes only a subset of the Argentine-law bonds,

---

[11] Citibank also has completely resisted Plaintiffs' discovery requests in connection with several factual assertions its raises on appeal, including Citibank's assertions that it risks criminal prosecution if it complies with the Injunctions. On August 28, 2014, NML moved to compel certain discovery from Citibank.

all of which are evidently Exchange Bonds.  *Compare* Appellees' Opp'n to Motion to Expedite 11 n.7 (Aug. 12, 2014) (Dkt. #43), *with* Argentina Br. 16 n.5. Argentina's tacit admission that the only bonds paid on September 30, 2014, are Exchange Bonds (and therefore subject to the Injunction) indicates that Argentina can tell the difference between some Argentine-law Exchange Bonds and other Argentine-law bonds.  Argentina and Citibank thus bear a heavy burden of proving that the bonds issued to Repsol are impossible to identify.  They have not come close to carrying that burden.

But even crediting Argentina's and Citibank's unsubstantiated claims that distinguishing Exchange Bonds from the bonds issued to Repsol now is impossible, that circumstance would not remotely justify diluting the Injunction because it is one of the Republic's own making.  Argentina has been aware at the very least since May 2013—when Citibank first moved for clarification as to the Argentine-law Exchange Bonds—that such bonds were subject to the Injunction. And it was demonstrably capable of issuing new bonds using distinct identification numbers to avoid potential confusion.[12]  Yet nearly a year later, and eight months after this Court affirmed the Injunction, Argentina chose, in its April 2014

---

[12] For example, in the 2010 exchange, Argentina issued certain bonds with the same terms as bonds that had been issued in the 2005 Exchange, but with a different ISIN for the 2010 bonds.

settlement with Repsol, to provide as consideration bonds bearing the Common ISIN—deliberately commingling the new debt with Exchange Bonds.

As the district court properly recognized, Argentina's calculated choice to frustrate enforcement of the Injunction by blurring the distinction between bonds covered by the Injunction and others does not justify carving out Argentine-law bonds from the Injunction.   Argentina's conscious commingling hardly renders enforcement of the Injunction as to Argentine-law Exchange Bonds less equitable. At equity, for example, commingling fungible assets encumbered by a lien with others did not cleanse all of the assets of any restriction; quite the opposite, if assets encumbered by a lien were intermixed with others, the party holding the lien acquired a right against the "entire mass."[13]  So, too, Argentina's effort to make identifying Exchange Bonds impossible—and to use its obligations to others to shield its disregard of its contractual duty to Plaintiffs from judicial scrutiny—is no reason in equity to excuse its noncompliance with the order it seeks to evade. Indeed, its attempt to make enforcement of the Injunction harmful to holders of bonds first issued to Repsol is in substance simply a "threa[t] to punish third

---

[13] *Peters v. Bain*, 133 U.S. 670, 693-94 (1890); *see also*, *e.g.*, *Cent. Nat. Bank v. Conn. Mut. Life Ins. Co.*, 104 U.S. 54, 67 (1881); Austin W. Scott, *The Right to Follow Money Wrongfully Mingled with Other Money*, 27 Harv. L. Rev. 125, 125-29, 138 (1913).

parties," which cannot be allowed to "dictate" the scope of injunctive relief. *NML II*, 727 F.3d at 242.[14]

### 3. Modifying The Injunction To Permit Payment On Argentine-Law Bonds Would Subvert The Injunction And Provide Argentina With A Roadmap For Future Evasion.

Not only have Argentina and Citibank failed to show that changed circumstances have rendered the existing Injunction inequitable, but modifying the Injunction as they propose would work tremendous injustice to Plaintiffs. Their proposals would severely undermine the Injunction, providing the Republic with a roadmap to circumvent it.

Indeed, exempting Citibank from the Injunction would encourage Argentina to attempt to execute the very bond-exchange scheme—designed to relocate the Exchange Bond payment stream offshore to Argentina—that the district court has repeatedly ruled is forbidden by the Injunction. Despite Argentina's frequent statements of its intention to continue making payments on Exchange Bonds without paying Plaintiffs, *see NML II*, 727 F.3d at 238 n.4, Argentina has thus far been unable to make such prohibited payments absent explicit court approval. When it attempted to pay on the Exchange Bonds in June 2014 *without* making a

---

[14] In any event, the district court may have at its disposal any number of remedies once the circumstances surrounding the bonds issued to Repsol (and any others that appellants claim should not be affected by the Injunction) are fully known. *Cf.* Aurelius Br. 36-39.

payment to Plaintiffs, for example, Argentina's efforts were thwarted because the financial institutions that facilitated the Republic's payments rightfully refused to facilitate Argentina's violation of the Injunction:  BNYM, the indenture trustee, refused to forward a $539 million payment on New York and English law Exchange Bonds.  *See* D.E.274.

Argentina thus seeks to sidestep this obstacle by removing BNYM and other non-Argentine institutions from the payment process, and replacing them with pliant domestic entities that will follow the Republic's directives notwithstanding U.S. courts' clear mandates.  And if this Court excuses Citibank from obeying the Injunction solely because complying with the Injunction would contravene Argentina's domestic directions, that scheme is much more likely to succeed.  Under Citibank's logic, *any* Argentine institution could likewise claim to be exempt from the Injunction based on Argentina's threatened enforcement of its self-serving laws requiring banks to facilitate payments the Injunction forbids.

Similarly, exempting the Argentine-law Exchange Bonds from the Injunction altogether because Argentina has commingled them with bonds subsequently issued to Repsol using the Common ISIN would give Argentina yet another incentive to attempt to evade the Injunctions.  Argentina's most recently announced plot for evasion calls for the Republic to allow Exchange Bondholders to exchange their non-Argentine-law bonds for new bonds governed by Argentine

law.  These new bonds would undoubtedly constitute "Exchange Bonds" under the Injunctions, because they would have been issued "pursuant to … any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future."  J.A.1462.  But under the logic of appellants' Repsol-bonds theory, Argentina potentially could exempt these new bonds from the Injunction simply by giving them the same Common ISIN as the bonds issued to Repsol.  Equity surely does not require rewriting the Injunction to encourage such evasion.

## CONCLUSION

For the foregoing reasons and those stated in the brief of Aurelius, these appeals should be dismissed for lack of appellate jurisdiction.  In the alternative, for the reasons set forth above, the district court's July 28 Order should be affirmed.

Dated:  August 29, 2014

Respectfully submitted,

  /s/ Theodore B. Olson

Leonard F. Lesser
  (llesser@simonlesser.com)
SIMON LESSER PC
355 Lexington Avenue
New York NY  10017
(212) 599-5455

*Counsel for Appellee Olifant Fund, Ltd.*

Theodore B. Olson
  (tolson@gibsondunn.com)
Matthew D. McGill
  (mmcgill@gibsondunn.com)
Jason J. Mendro
  (jmendro@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

Robert A. Cohen
  (robert.cohen@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500

*Counsel for Appellee NML Capital, Ltd.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because this brief contains 13,978 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  August 29, 2014          /s/ Theodore B. Olson
                                 Theodore B. Olson
                                   (tolson@gibsondunn.com)
                                 GIBSON, DUNN & CRUTCHER LLP
                                 1050 Connecticut Avenue, N.W.
                                 Washington, D.C.  20036
                                 (202) 955-8500